No. 03-504

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2004 MT 236

JEREMY RUHD,

        Petitioner and Respondent,

    v.

LIBERTY NORTHWEST INSURANCE CORPORATION,
and RICHARD BARBER d/b/a BARBER HOMES,

        Respondents and Respondents,

    v.

FISCH, FROST, RAUSCH,

        Intervenors and Appellants.

APPEAL FROM:    Workers' Compensation Court, State of Montana,
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Monte D. Beck (argued), Beck, Richardson & Amsden, PLLC, Bozeman, Montana (Fisch)

                Stephen D. Roberts, Attorney at Law, Bozeman, Montana (Frost)

                Lon J. Dale (argued), Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, Montana (Rausch)

        For Respondent Ruhd:

                Geoffrey C. Angel (argued), Angel Law Firm, Bozeman, Montana

        For Amicus Curiae Montana State Fund:

                Bradley J. Luck, Thomas J. Harrington, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

                        Argued:  March 24, 2004
                     Submitted:  April 27, 2004
                       Decided:  August 31, 2004

Filed:



                                Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Appellants/Intervenors, Fisch, Frost, and Rausch, and their respective counsel, Mr. Monte Beck,  Mr. Stephen Roberts, and Mr. Lon Dale, appeal a decision of the Workers' Compensation Court (WCC) that the attorneys' fees common fund created via the litigation entitled *Rausch v. State Compensation Insurance Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25, was limited solely to claimants insured by the State Fund.   The Workers' Compensation Court bifurcated the issue of common fund attorneys' fees from the other issues in the case and certified it for appeal.

¶2      We state the issues on appeal as follows:

¶3      Did the Workers' Compensation Court err in determining that Intervenors' counsel are not entitled to common fund attorneys' fees with respect to impairment awards payable by insurers other than the State Fund.

¶4      Did the Workers' Compensation Court err in determining that Ruhd's attorney is entitled to common fund attorneys' fees with respect to all relevant impairment awards payable by Liberty Northwest Insurance Corporation.

¶5      Reversed and remanded.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6      The history of this case is intertwined with that of *Rausch v. State Compensation Insurance Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25.[1]  In 1999 and 2000, Rausch,

---

[1]      The *Rausch* decision encompasses three companion cases: *Rausch v. State Compensation Insurance Fund*, WCC No. 9907-8274; *Fisch v. State Compensation Insurance Fund*, WCC No. 2000-0023; *Frost v. State Compensation Insurance Fund*, WCC No. 2000-0030.

2

Fisch, and Frost filed petitions in the WCC on behalf of themselves and all similarly situated workers, to determine whether permanently totally disabled workers were entitled to impairment awards upon establishment of their impairment ratings or if they had to wait until retirement age. In late 2000 and early 2001, the WCC determined that permanently totally disabled workers' compensation claimants were not entitled to impairment awards at all. The plaintiffs appealed.

¶7    In January 2002, while the *Rausch* appeal was pending in this Court, Ruhd filed a petition in the WCC seeking essentially the same relief as that sought in *Rausch* with the exception that Liberty Northwest Insurance Corporation was the defendant insurer. In June 2002, Ruhd amended his petition to join similarly situated claimants and for common fund attorneys' fees. In August 2002, the WCC entered judgment against Ruhd relying on its prior decision in *Rausch*. Ruhd appealed.

¶8    On September 5, 2002, this Court decided *Rausch v. State Compensation Insurance Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25. The decision reversed the WCC and held that permanently totally disabled workers are entitled to impairment awards immediately upon receipt of their impairment ratings. The decision also held that the *Rausch* attorneys were entitled to common fund fees from the State Fund. The decision, however, did not specifically reach the question of whether the common fund included only claimants ensured by the State Fund or whether the common fund included all permanently totally disabled claimants irrespective of their insurer.

¶9    Immediately following the *Rausch* decision, Liberty acknowledged that the decision was binding upon it and agreed to pay Ruhd an impairment award under the same terms and

3

conditions as set forth in *Rausch*. On December 10, 2002, this Court decided *Ruhd v. Liberty Northwest Insurance Corp.*, 2002 MT 290N, affirming Liberty's agreement to pay Ruhd pursuant to the holding in *Rausch*, and remanding the issues of class certification and common fund attorneys' fees to the WCC.

¶10 On remand the WCC joined the *Rausch* attorneys as Intervenors on the issue of whether they were entitled to common fund attorneys' fees from all permanently totally disabled impairment claimants regardless of insurer. The court concluded that the *Rausch* attorneys were not entitled to common fund fees from any claimants other than State Fund claimants. The WCC ordered that Ruhd's attorney, Geoffrey Angel, was entitled to common fund attorneys' fees from all Liberty claimants. The court denied class certification but retained jurisdiction to oversee payment of impairment awards by Liberty, and to determine the appropriate common fund fee awards.

## STANDARD OF REVIEW

¶11 The parties dispute the appropriate standard of review to be applied to this case. Ruhd asserts that the WCC made a discretionary ruling that Ruhd's counsel was entitled to common fund attorneys' fees from the Liberty claimants. Further, Ruhd contends that while the WCC could have extended the common fund doctrine to all workers' compensation insurers in Montana, it exercised its discretion in only extending the doctrine to the State Fund in *Rausch* and Liberty in *Ruhd*.

¶12 The Intervenors assert that the WCC decision constitutes an incorrect conclusion of law in determining that the *Rausch* common fund did not include claimants covered by insurers other than the State Fund.

4

¶13    We hold the decision by the WCC was a conclusion of law. The issue is not whether the WCC abused its discretion in awarding fees, but rather what would be the source of the fees once awarded. This Court undertakes plenary review of the WCC's conclusions of law to determine whether the WCC was correct. *Murer v. State Compensation Mutual Insurance Fund* (1997), 283 Mont. 210, 217, 942 P.2d 69, 73.

## DISCUSSION

### Issue One

¶14    Did the Workers' Compensation Court err in determining that Intervenors' counsel are not entitled to common fund attorneys' fees with respect to impairment awards payable by insurers other than the State Fund.

¶15    When a party, through active litigation, creates, reserves, preserves, or increases a fund which directly benefits an ascertainable class of non-participating beneficiaries, the common fund doctrine provides that non-participating beneficiaries sharing in the proceeds of the fund must bear a portion of the litigation costs including reasonable attorneys' fees. *Rausch*, ¶ 46-47.

¶16    There are three elements necessary to establish a common fund. First, a party, styled the active beneficiary, must create, reserve, preserve, or increase an identifiable monetary fund or benefit in which all active and non-participating beneficiaries have an interest. Second, the active beneficiary must incur legal fees in establishing the common fund. Third, the common fund must benefit ascertainable, non-participating beneficiaries. *Mountain West Farm Bureau Mutual Ins. Co. v. Hall*, 2001 MT 314, ¶¶ 15-18, 308 Mont. 29, ¶¶ 15-18, 38 P.3d 825, ¶¶ 15-18.

¶17 The parties to this appeal seize on specific phraseology utilized in our decision in *Rausch* to make their arguments. Ruhd and the WCC focused on the following language:

> The attorneys incurred legal costs and fees in the preservation of that right, and the common fund will benefit an ascertainable class of workers who were denied immediate payment of an impairment award **by the State Fund** . . . .

*Rausch*, ¶ 48, (emphasis added).

Ruhd and the WCC argue that this Court utilized the emphasized language in order to limit the common fund created in *Rausch* solely to claimants insured by the State Fund.

¶18 On the contrary, Intervenors argue that this Court's statement that "[t]he attorneys representing Rausch, Fisch, and Frost all engaged in active litigation which preserved the benefit of immediate impairment awards *to permanently totally disabled claimants*" is more telling. *Rausch*, ¶ 48, (emphasis added). Intervenors contend that this language, coupled with the broadly inclusive tenor of *Rausch* when read in its entirety, constitutes a conclusion that Intervenors recover common fund fees from all permanently totally disabled claimants irrespective of insurer.

¶19 In *Rausch*, we had before us only claimants insured by the State Fund. However, there is no question that the Intervenors, via active litigation, are directly responsible for securing the right of all permanently totally disabled claimants to receive an impairment award, regardless of their insurer. While it is true that in *Rausch* the State Fund was the named defendant, and therefore our focus, this was because the issue, whether carriers other than the State Fund should be included in the common fund application, was not specifically raised.

¶20 The three elements necessary for establishment of a common fund have been met by

6

the Intervenors. There is no question that elements two and three are satisfied. Intervenors have incurred fees pursuing litigation, and all permanently totally disabled claimants constitute an ascertainable class.

¶21 Primarily disputed is element one; whether Intervenors created a benefit for all beneficiaries or merely State Fund beneficiaries. Prior to our decision in *Rausch*, the State Fund, Liberty, and perhaps other workers' compensation insurers, contested either the availability of impairment awards to permanently totally disabled claimants, or contested the timing of those payments. Intervenors efforts in the *Rausch* litigation resolved both questions in favor of claimants.

¶22 In spite of this, Ruhd argues that the WCC correctly awarded Mr. Angel common fund fees with respect to Liberty claimants because Mr. Angel pressed forward with the claim against Liberty and established Liberty's liability in spite of his awareness of an adverse holding in the WCC on similar issues presented in *Rausch*. As soon as we decided *Rausch*, however, liability for immediate payment of impairment awards was established against all insurers. Acknowledging this, Liberty capitulated and agreed to pay Ruhd as required by *Rausch*. In disposing of Ruhd's appeal, we stated,

> Ruhd and Liberty agree that Ruhd's claim to an impairment award under the 1999 version of the Act has been resolved by the Court's decision in *Rausch* . . . . Liberty indicates that it will pay Ruhd the benefits to which he is entitled . . . . Ruhd does not contest this assertion.

*Ruhd*, ¶ 12. The *Rausch* decision disposed of the questions presented by Ruhd. There was nothing further for Mr. Angel to do, and his efforts did not assist the Intervenors in any way in establishing new legal authority or in creating a common fund.

7

¶23    Additionally, Ruhd relies heavily on the fact that the WCC assigned significant weight to the work Mr. Angel would have to do prospectively in enforcing the Liberty claims.   He argues that merely establishing new precedent is not key, rather, the laborious process of enforcing payment is paramount.   The common fund doctrine requires creation, increase, reservation, or preservation of a common fund.  Enforcement in a specific case is not a necessary element of the common fund doctrine.  If enforcement of *Rausch* is unduly complicated or difficult in a specific case, it is possible for the WCC to consider further fees.

¶24    A conclusion contrary to what is held here could easily spawn unnecessary litigation. Acknowledging, as the parties posit, that there are 600 licensed insurers that could be implicated, it appears from the record that there are only 165 permanently totally disabled claimants covered by 48 active insurers in the state of Montana.  Holding that Intervenors are only entitled to common fund fees from State Fund claimants, and that Mr. Angel is entitled to common fund fees from Liberty claimants, could inspire at least one claimant covered by each of the other 46 insurers to file a suit which could lead nowhere but to where we are right now.  The law established by *Rausch* will not be changed by further suits. Redundant litigation, which could lead to disparate fee awards, and thus disparate recovery, should not be encouraged.

¶25    We hold that the common fund for attorneys' fees created by *Rausch* includes fees culled from all claimants regardless of insurer.  The Workers' Compensation Court is reversed on this issue.  The Workers' Compensation Court shall supervise enforcement of the common fund pursuant to *Rausch*, and all court-approved agreements stemming from it, from all insurers involved.

8

**Issue Two**

¶26     Did the Workers' Compensation Court err in determining that Ruhd's attorney is entitled to common fund attorneys' fees with respect to all relevant impairment awards payable by Liberty Northwest Insurance Corporation.

¶27     Resolution of issue one forecloses Ruhd's counsel's claim for common fund attorney's fees with respect to all Liberty claimants. However, this does not foreclose counsel's claim to fees for work done in Ruhd's case.

¶28     The common fund doctrine was created to prevent unjust enrichment of claimants who receive the benefit of a successful lawsuit but who did not participate in the suit. Subsumed within this broad purpose is a narrower purpose which is designed to prevent unjust enrichment of fee-seeking attorneys who join a suit on behalf of a beneficiary, but who add no value to the suit. This problem has been denominated "free-riding" and "coattailing" by various courts. *See duPont v. Shackelford* (Va. 1988), 369 S.E. 2d 673, 677; *Hobson v. First State Bank* (Tenn.App.1990), 801 S.W.2d 807, 810.

¶29     We addressed this problem to some extent in *Means v. The Montana Power Company* (1981), 191 Mont. 395, 404, 625 P.2d 32, 37, stating that non-participating beneficiaries should bear litigation costs under the common fund doctrine, and that a non-participating beneficiary is one who fails to retain counsel or whose counsel "fails, in any degree, to participate in any labors leading to the creation of the fund." Based on this definition, *Means* further held that where more than one active beneficiary retained counsel, but counsel for one did the bulk of the work while the other did relatively little, counsel who did the lion's share of the work would still be entitled to common fund fees from the less active party.

9

*Means*, 191 Mont. at 404, 625 P.2d at 37. This situation presumes, however, that both attorneys are representing parties to the same litigation.

¶30    Factually, *Means* does not precisely mimic the situation currently before us, but does provide a useful analogy. Ruhd's counsel, while ably advocating on Ruhd's behalf, did not assist in any way in the creation of the common fund at issue. Intervenors filed a suit on behalf of their individual clients and all others similarly situated. Ruhd was a similarly situated beneficiary and was entitled to retain his own counsel. *The Travelers Insurance Co. v. Williams* (Tenn. 1976), 541 S.W.2d 587, 590. However, rather than joining the suit filed by Intervenors, as is typically the case, Ruhd filed a separate suit making the same statutory claims against a different defendant. Ultimately, via successful prosecution of the *Rausch* litigation, Intervenors were solely responsible for creation of the common fund. In seeking common fund fees for work that did not contribute to creation of the *Rausch* common fund, Ruhd's counsel asks too much.

¶31    To resolve this problem, we believe reversion to the general American rule, that counsel must look only to his own client for remuneration, is appropriate. *Mountain West*, ¶ 13. The decision of the WCC that Ruhd's counsel is entitled to common fund fees from all relevant claimants insured by Liberty is reversed. Intervenors have advised they will seek no common fund fees from Ruhd. Ruhd's counsel's claim for fees is limited to the terms of his contract with Ruhd. *See also Vincent v. Hughes Air West, Inc.* (9th Cir. 1977), 557 F.2d 759, 772 (the vesting of certain attorneys with a recognized representative status in a common fund case limited reimbursement for the other attorneys to the terms of their individual contracts with their clients).

10

¶32    Determination of the appropriate fee award due Mr. Angel is remanded to the WCC.

¶33    Reversed and remanded to the Workers' Compensation Court for proceedings in conformity with this Opinion.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE