No. 04-523

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 144

CASSANDRA M. SCHMILL,

      Petitioner, Respondent and Cross-Appellant,

   v.

LIBERTY NORTHWEST INSURANCE CORPORATION,

      Respondent, Insurer, and Appellant,

   and

MONTANA STATE FUND,

      Intervenor and Appellant.

APPEAL FROM:    The Workers' Compensation Court,
                  Honorable Mike McCarter, Judge

COUNSEL OF RECORD:

      For Appellants:

          Larry W. Jones, Jones and Garber, Missoula, Montana (Liberty)

          Bradley Luck and Thomas Harrington, Garlington, Lohn & Robinson, Missoula, Montana (State Fund)

      For Respondent:

          Laurie Wallace, Bothe & Lauridsen, Columbia Falls, Montana

Submitted on Briefs: April 20, 2005

Decided: June 7, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Liberty Northwest Insurance Corp. (Liberty) and Montana State Fund (State Fund) appeal from the judgment of the Workers' Compensation Court (WCC). Cassandra Schmill cross-appeals from the same judgment. We affirm in part and reverse in part.

¶2      We address the following issues on appeal:

¶3      1. Whether the rule announced in *Schmill I* applies retroactively.

¶4      2. Whether Schmill's attorneys are precluded from requesting common fund fees because they did not request them in their initial petition.

¶5      3. Whether *Schmill I* created a common fund.

¶6      4. Whether the common fund established by *Schmill I* created a global lien in all resulting benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7      This is the second time we have seen this litigation. In *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, 315 Mont. 51, 67 P.3d 290 (*Schmill I*), we held that it was a violation of the equal protection clauses of the Montana and United States Constitutions to allow for apportionment deductions for nonoccupational factors in the Occupational Disease Act (ODA), but not in the Workers' Compensation Act (WCA). *Schmill I*, ¶ 23. Therefore, we concluded that the ODA's apportionment provision, § 39-72-706, MCA, was unconstitutional. *Schmill I*, ¶ 23. The factual background to this litigation is set out in our opinion in *Schmill I*.

2

¶8    On remand, the WCC addressed two primary questions: whether the rule we announced in *Schmill I* applies retroactively, and whether *Schmill I* created a common fund. The court answered both in the affirmative. Pursuant to the latter question, the court also concluded that petitioner Schmill's attorneys were entitled to common fund attorney fees, and that the common fund attorney fees were limited to claims handled by Liberty and thus did not create a global lien. The Appellants argue that the rule in *Schmill I* does not apply retroactively, that Schmill's attorneys failed to plead for common fund fees, and that *Schmill I* did not create a common fund. Schmill cross-appeals the court's conclusion that *Schmill I* did not create a global lien.

¶9    After the close of briefing in this appeal we announced *Dempsey v. Allstate Insurance Co.*, 2004 MT 391, 325 Mont. 207, 104 P.3d 483. *Dempsey* clarified this State's rule on the retroactivity of judicial decisions and restricted the circumstances in which a decision may be applied prospectively only. *Dempsey*, ¶¶ 29-30. Because of this change in our retroactivity jurisprudence, we invited the parties to submit supplemental briefing on the question of how *Dempsey* applies to this case.

¶10   The parties stipulated to a set of facts in their arguments before the WCC. We cite these facts below where appropriate.

**STANDARD OF REVIEW**

¶11   We review the WCC's conclusions of law to determine whether they are correct. *Van Vleet v. Montana Ass'n of Counties Workers' Comp. Trust*, 2004 MT 367, ¶ 9, 324 Mont.

3

517, ¶ 9, 103 P.3d 544, ¶ 9. We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence. *Van Vleet*, ¶ 9.

## DISCUSSION

### ISSUE ONE

¶12 *Whether the rule announced in Schmill I applies retroactively.*

¶13 In *Dempsey* we concluded that the opinions of this Court regarding questions of state law are presumptively retroactive. We allowed for an exception to this presumption when an opinion satisfies all three of the *Chevron* factors. *Dempsey*, ¶ 31. This conclusion was consistent with our prior holdings, although admittedly not consistent with some of our prior dicta. *See Dempsey*, ¶ 30 (recognizing dicta from *Poppleton v. Rollins* (1987), 226 Mont. 267, 271, 735 P.2d 286, 289, indicating that only one of the *Chevron* factors must be satisfied). The *Chevron* factors originate from *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, and are as follows:

> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'"

*Dempsey*, ¶ 21 (quoting *Chevron*, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted)). Even before our decision in *Dempsey*, rarely did we conclude that an

4

opinion should be applied prospectively only because it satisfied all three *Chevron* factors. *See Dempsey*, ¶ 30 (noting that only in two relevant instances have we concluded that all three factors were satisfied).

¶14    Liberty and the State Fund argue that *Schmill I* satisfies all three factors and that it therefore should be applied prospectively only. The WCC, ruling before our issuance of *Dempsey*, concluded that *Schmill I* satisfied none of the factors. As discussed below, we conclude that *Schmill I* does not meet the second factor. Because this conclusion is dispositive, we do not decide whether the decision meets the first and third factors. *See Dempsey*, ¶ 33 (declining to address the second and third factors because the decision in question failed factor one). However, we also note below that the State Fund's arguments for why *Schmill I* meets the third factor are very likely inapposite given the rule of finality that *Dempsey* also established.

¶15    The second *Chevron* factor, again, requires us to "'"'weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."'"' *Dempsey*, ¶ 21 (quoting *Chevron*, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted)). This Court has boiled this language down to simply asking whether the retroactive application of a rule of law will further or retard its operation. *See Benson v. Heritage Inn, Inc.,* 1998 MT 330, ¶ 25, 292 Mont. 268, ¶ 25, 971 P.2d 1227, ¶ 25; *Riley v. Warm Springs State Hosp.* (1987), 229 Mont. 518, 521, 748 P.2d 455, 457; *LaRoque v. State* (1978), 178 Mont. 315, 320, 583 P.2d 1059, 1062.

¶16    The rule of *Schmill I* in question here is that, under an equal protection analysis, the ODA cannot allow for apportionment deductions for nonoccupational factors if the WCA does not allow for such deductions.  A retroactive application of this rule will allow for workers whose occupational diseases arose before our decision in *Schmill I* to receive full workers' compensation awards.  It will place them on an equal footing with workers whose occupational diseases arise after *Schmill I*, thus furthering the rule's aim of equal compensation between the ODA and WCA claimants.  Further, a retroactive application will not retard the rule's operation.  Future claimants will not find it more difficult to receive non-apportioned awards if *Schmill I* applies retroactively.  We conclude that since *Schmill I* does not satisfy the second *Chevron* factor, the decision applies retroactively.

¶17    Liberty and the State Fund, in briefing, devoted a considerable time to addressing the third *Chevron* factor.  That factor requires us to weigh "'the inequity imposed by retroactive application . . . .'"    *Dempsey*, ¶ 21 (quoting *Chevron*, 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306).  Although, in this case, this weighing does not affect the issue of retroactivity (because of our conclusion regarding the second factor), we comment on the State Fund's treatment of the third factor because it appears that the State Fund, as well as Liberty and Schmill, may not have grasped the full impact of *Dempsey*.  Although *Dempsey* emphasized a presumption of retroactivity, it also stated that retroactive application does not mean that prior contrary rulings and settlements are void *ab initio*.  *Dempsey*, ¶ 31.  Rather, due to reasons of finality, "[T]he retroactive effect of a decision . . . does not apply to cases that became final or were settled prior to a decision's issuance."  Thus, if an occupational

6

disease claim was settled or became final prior to our ruling in *Schmill I* then *Schmill I* does not affect whatever apportionment might have been deducted from the claim's award.

¶18   Although the State Fund's argument recognizes the rejection of the void *ab initio* rule, the State Fund nonetheless raises the specter of the inequities that would result from a retroactive application of *Schmill I*.  Drawing from the stipulated facts, the State Fund argues that a retroactive application would affect as many as 3,543 claim files dating back to July 1, 1987, and would force the State Fund to review each of those files.  This would take many hours of labor, especially because many of the claims are closed and inactive and lack the claimants' current addresses.  In addition, the State Fund estimated that the cost of a retroactive application would total as much as $2.8 million in additional benefits for claims arising between July 1, 1987, and the date of *Schmill I*.

¶19   As the State Fund admits, many of these claims are settled, closed, or inactive.  From the record before us, it cannot be determined how many of the 3,543 claims would, in the context of workers' compensation law, be considered "final or settled" under our holding in *Schmill I*.  We leave that initial determination to the WCC.

### ISSUE TWO

¶20   *Whether Schmill's attorneys are precluded from requesting common fund fees because they did not request them in their initial pleadings.*

¶21   Before we move on to the issue of whether *Schmill I* created a common fund, we must decide whether Schmill's attorneys properly requested common fund attorney fees.  At the beginning of this entire proceeding, Schmill's attorneys did not plead for common fund

7

attorney fees. Instead, her attorneys merely pled for statutory attorney fees. It was only after our decision in *Schmill I* that Schmill's attorneys prayed for common fund attorney fees. Liberty and the State Fund argue that the WCC erred in awarding common fund attorney fees because it does not have jurisdiction to do so. In addition, Liberty and the State Fund contend that Schmill's attorneys' failure to plead common fund attorney fees in their initial petition estops them from seeking such fees on remand and violates due process.

¶22 On the jurisdiction issue, Liberty asserts that the WCC can only award "penalties and assessments allowed against an insurer under chapter 71 . . . ." Section 39-71-2905, MCA. Since common fund attorney fees are not included in Chapter 71, continues Liberty, the WCC cannot award them. However, the WCC itself correctly noted that common fund attorney fees are not assessed against an insurer but against claimants. *See Schmill v. Liberty Nw. Ins. Corp.*, 2004 MTWCC 47, ¶ 7 (citing *Murer v. State Comp. Mut. Ins. Fund* (1997), 283 Mont. 210, 222-23, 942 P.2d 69, 76-77). We have previously stated that § 39-71-2905, MCA, grants the WCC broad jurisdictional powers including the "payment of attorney's fees and related costs." *Kelleher Law Office v. State Comp. Ins. Fund* (1984), 213 Mont. 412, 415, 691 P.2d 823, 825. Therefore, we conclude that the WCC had jurisdiction to award common fund attorney fees.

¶23 As for the contentions of Liberty and the State Fund that Schmill's attorneys should have pled for common fund attorney fees in their initial petition, they ignore the fact that a common fund does not arise until after the initial round of litigation. The timing is similar to that in *Kunst v. Pass*, 1998 MT 71, ¶ 38, 288 Mont. 264, ¶ 38, 957 P.2d 1, ¶ 38. In *Kunst*,

8

the relevant statute allowed for an award of attorney fees to a "'prevailing party.'" *Kunst*, ¶ 38 (quoting § 70-24-442(2), MCA). The prevailing plaintiffs did not request attorney fees until after the trial court granted them a directed verdict. We held that because the plaintiffs did not become a "prevailing party" until after the directed verdict "[i]t was thus entirely proper and necessary for Plaintiffs to wait until after the court had granted them a directed verdict to file a motion for attorney's fees." *Kunst*, ¶ 38. In this case, the common fund did not arise until after we issued *Schmill I*. Therefore, it was proper for Schmill's attorneys to wait until post-remand proceedings to request common fund attorney fees. Furthermore, again, because the common fund did not arise until after we issued *Schmill I*, Schmill's attorneys are not now estopped from requesting common fund attorney fees and there is no due process violation. Since Schmill's attorneys properly requested common fund attorney fees, we can reach the issue of whether *Schmill I* created a common fund.

### ISSUE THREE

¶24    *Whether* Schmill I *created a common fund.*

¶25    After an in-depth analysis of the issue, the WCC concluded that *Schmill I* created a common fund. The State Fund does not challenge this conclusion. Liberty does challenge the conclusion, but only on the assumption that *Schmill I* does not apply retroactively. Liberty goes so far as to say that if *Schmill I* does apply retroactively then the decision did create a common fund. Since we have determined that the WCC was correct in concluding that *Schmill I* does apply retroactively, there is no challenge to the court's further conclusion that *Schmill I* created a common fund. Therefore, we do not disturb the court's conclusion on this issue.

9

**ISSUE FOUR**

¶26    *Whether the common fund established by* Schmill I *created a global lien in all resulting benefits.*

¶27    Schmill cross-appeals the WCC's conclusion that the common fund created in *Schmill I* did not apply a global lien, but only a lien on claimants whose benefits are paid by Liberty. The WCC stated that "[i]n *Ruhd v. Liberty Northwest Ins. Corp.*, 2003 MTWCC 38, I held that the common fund doctrine extends only to the claimants whose benefits are paid by the respondent insurer. I rejected the claim that the petitioner's attorney is entitled to a fee from all the claimants who may benefit from the precedent irrespective of the insurer liable for the benefits. While my decision in *Ruhd* has been appealed to the Supreme Court, I find no reason to reconsider or deviate from my decision." *Schmill v. Liberty Nw. Ins. Corp.,* 2004 MTWCC 47, ¶ 54. Subsequent to the appeal in the instant case, we reversed the WCC's decision in *Ruhd*, concluding that the common fund created in that case "includes fees culled from all claimants regardless of insurer." *Ruhd v. Liberty Nw. Ins. Corp.*, 2004 MT 236, ¶ 25, 322 Mont. 478, ¶ 25, 97 P.3d 561, ¶ 25. Pursuant to the reasoning of *Ruhd* we likewise reverse the WCC on this issue, holding that the common fund created in *Schmill I* applied a global lien against all claimants who may benefit from the decision, not just those whose benefits are paid by Liberty.

10

**CONCLUSION**

¶28     We conclude that our decision in *Schmill I* is retroactive to all cases not yet final or settled at the time of its issuance.  Schmill's attorneys properly requested common fund attorney fees and the common fund created in *Schmill I* results in a global lien.


/S/ W. WILLIAM LEAPHART


We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS

11