No. 04-737

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 257

DEBRA STAVENJORD,

        Petitioner and Appellant,

   v.

MONTANA STATE FUND,

        Respondent and Cross-Appellant.

APPEAL FROM:    The Montana Workers' Compensation Court,
                      WWC 2000-0207,
                      Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Thomas J. Murphy, Murphy Law Firm, Great Falls, Montana

        For Respondent:

        Bradley J. Luck, Thomas J. Harrington, Garlington, Lohn &
        Robinson, PLLP, Missoula, Montana

        David Hawkins, Montana State Fund, Helena, Montana

Heard on Oral Argument:  October 26, 2005

Decided:    October 6, 2006

Filed:

_____
                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Both parties appeal from an Order of the Workers' Compensation Court (WCC) related to common fund attorney fees and retroactive application of our ruling in *Stavenjord v. Montana State Fund*, 2003 MT 67, 314 Mont. 466, 67 P.3d 229 (*Stavenjord I*).  In *Stavenjord I*, we affirmed the WCC's determination that: (1) application of § 39-72-405(2), MCA (1997), to Debra Stavenjord's claim against Montana State Fund (State Fund) violated her constitutional equal protection rights, and (2) Stavenjord should receive benefits related to her occupational disease equal to benefits she would have received had she been injured.  On remand in the WCC, State Fund paid Stavenjord's additional benefits.  Stavenjord then sought retroactive application of *Stavenjord I*, and the recovery of common fund attorney fees for *Stavenjord*-type benefits secured by non-participating claimants.  The WCC ordered partial retroactive application of *Stavenjord I*, and common fund attorney fees for claims arising within the period of retroactivity.  Stavenjord appeals.  State Fund cross-appeals.  We reverse and remand.

## ISSUES

¶2    The restated issues on appeal and cross-appeal are:

1.  Whether *Stavenjord I* applies retroactively to open claims arising on or after June 30, 1987.

2.  Whether the WCC erroneously applied the date of maximum medical improvement as the entitlement date for retroactivity purposes.

2

3. Whether the WCC erroneously concluded that *Stavenjord I* created a common fund entitling Stavenjord's counsel to collect common fund fees from non-participating claimants who benefit from the decision.

4. Whether the WCC erroneously concluded that Stavenjord's counsel timely asserted a claim for common fund attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 We first addressed Stavenjord's case in *Stavenjord I*, and refer the reader to that case for the factual background leading to this appeal. Additionally, the parties stipulated to facts on which the WCC relied during *Stavenjord I* remand proceedings, and which we reference below as necessary.

¶4 In *Stavenjord I* we held that certain provisions of the Occupational Disease Act (ODA) violate the equal protection clause of the Montana Constitution because workers who suffer from an occupational disease received lesser permanent partial disability (PPD) benefits than workers who are injured on the job receive under the Workers' Compensation Act (WCA). ¶ 48. We concluded that § 39-72-405(2), MCA (1997), was unconstitutional as applied to Stavenjord. *Stavenjord I*, ¶ 48.

¶5 As a result of post-remand proceedings, the WCC determined that partial retroactive application of *Stavenjord I* was appropriate, but only for claims arising on or after June 3, 1999. Further, the WCC found that a common fund had been created by *Stavenjord I*, and therefore Stavenjord's counsel was entitled to common fund attorney fees from non-participating PPD claimants benefiting from counsel's work on

3

Stavenjord's behalf. On August 27, 2004, the WCC issued the Order from which the parties appeal.

## STANDARD OF REVIEW

¶6 We review the WCC's conclusions of law to determine whether they are correct. *Schmill v. Liberty Northwest Ins. Corp.*, 2005 MT 144, ¶ 11, 327 Mont. 293, ¶ 11, 114 P.3d 204, ¶ 11 (*Schmill II*).

## DISCUSSION

## ISSUE ONE

¶7 *1. Whether Stavenjord I applies retroactively to open claims arising on or after June 30, 1987.*

¶8 Stavenjord contends the WCC erred when it restricted retroactive application of our ruling in *Stavenjord I* to open claims arising on or after June 3, 1999, and that the decision should apply to cases arising on or after June 30, 1987. State Fund responds that *Stavenjord I* applies prospectively only. Alternatively, State Fund argues the WCC correctly limited the scope of *Stavenjord I*'s retroactive application to cases arising on or after June 3, 1999. In addition, regarding retroactive application of *Stavenjord I*, State Fund urges this Court to limit application of the ruling to "cases pending on direct review." We therefore must decide whether *Stavenjord I* applies retroactively to workers' claims for PPD benefits related to occupational diseases, and if so, to what extent.

¶9 There exists a strong presumption in favor of retroactive application of new rules of law. *Dempsey v. Allstate Ins. Co.*, 2004 MT 391, ¶ 15, 325 Mont. 207, ¶ 15, 104 P.3d

4

483, ¶ 15.  In *Dempsey*, we reaffirmed our general rule that "we give retroactive effect to judicial decisions," while allowing for "an exception to that rule when faced with a truly compelling case for applying a new rule of law prospectively only."  *Dempsey*, ¶ 29 (citation omitted).  Recently, we concluded that we would recognize an exception to retroactive application of this Court's rulings only when all three factors first articulated by the U.S. Supreme Court in *Chevron* are met.  *Schmill II*, ¶ 13, referencing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349 (1971).  In *Dempsey*, we said that *Chevron*'s guidelines for evaluating the efficacy of prospective application of this Court's jurisprudence remain "viable as an exception to the rule of retroactivity."  *Dempsey*, ¶ 30.  (*See Dempsey*, ¶¶ 21-31 for a temporal overview of *Chevron*'s application in federal and Montana state courts.)

¶10    To overcome the strong presumption favoring retroactivity, the *Chevron* exception requires:

> First, that the decision to be applied [prospectively] must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed.  Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."  Finally, we have weighed the inequity imposed by retroactive application, for "where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of [prospective application]."

*Schmill II*, ¶ 13, citing *Dempsey*, ¶ 21, quoting *Chevron*, 404 U.S. at 106-07, 92 S.Ct. at 355.  Only twice has application of *Chevron* and its progeny resulted in a purely prospective application of this Court's rulings on questions of state law.  See *Ereth v.*

5

*Cascade County*, 2003 MT 328, 318 Mont. 355, 81 P.3d 463, and *Seubert v. Seubert*, 2000 MT 241, 301 Mont. 382, 13 P.3d 365, both of which predated the exhaustive analysis of the question of retroactivity published in *Dempsey,* and addressed again in *Schmill II*. Moreover, prospective application in both cases rested on cursory analyses of the *Chevron* factors. In any event, our decisions in *Dempsey* and *Schmill II* have now resolved any uncertainty there might have been regarding proper application of the *Chevron* factors in a retroactivity analysis.

¶11     Here, the WCC applied the *Chevron* factors and ultimately ordered partial retroactive application of *Stavenjord I* to open claims arising on or after June 3, 1999, but declined to order application of *Stavenjord I* to claims arising between June 30, 1987, and June 3, 1999. At the time the WCC wrote its Order, it did not have the benefit of *Dempsey* or *Schmill II*; accordingly, it relied instead upon patently misleading dicta from *Poppleton* for the proposition that "The general rule is that a rule of law will not be applied retroactively if **any** of the [*Chevron*] factors . . . are present." *Poppleton v. Rollins, Inc.*, 226 Mont. 267, 271, 735 P.2d 286, 289 (1987) (emphasis and bracketed material in WCC August 27, 2004 Order).[1] However, as we clarified in *Dempsey* and *Schmill II*, it is now well-settled that a party arguing for purely prospective application of this Court's jurisprudence must show that all three factors of the *Chevron* test are met. *Dempsey*, ¶ 31; *Schmill II, ¶* 13.

---

1 This misstatement of the *Chevron* test from *Poppleton* was dicta, because we in fact determined the *Poppleton* ruling applied retroactively.

6

¶12     We turn now to the question of whether the *Chevron* exception applies here.  First, we must determine whether *Stavenjord I* established a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.  *Schmill II*, ¶ 13; *Dempsey*, ¶ 21.

¶13     Before *Stavenjord I*, this Court had not considered the constitutionality of disparate PPD benefits awarded under the ODA as opposed to the WCA; thus, *Stavenjord I* decided an issue of first impression.  However, our ruling in *Stavenjord I* was clearly foreshadowed by our decision in *Henry v. State Compensation Ins. Fund,* 1999 MT 126, 294 Mont. 449, 982 P.2d 456.  In *Henry*, we held:

> In sum, we can see no rational basis for treating workers who are injured over one work shift differently from workers who are injured over two work shifts.  . . .  We conclude that providing rehabilitation benefits to workers covered by the WCA, but not to workers covered by the ODA, is not rationally related to the legitimate governmental interest of returning workers to work as soon as possible after they have suffered a work-related injury.  We hold that the ODA violates the equal protection clause of the Montana Constitution to the extent that it fails to provide vocational rehabilitation benefits.  ¶¶ 44-45.

While the benefit at issue in *Henry*—rehabilitation benefits—differed from the PPD benefits of concern in *Stavenjord I*, in all other respects related to our analysis of equal protection for similarly situated workers, *Henry* and *Stavenjord I* parallel one another.  In both cases, State Fund argued the two classes of workers seeking benefits—specifically (1) injured workers and (2) workers suffering from occupational disease—were not similarly situated under the law.  *Henry*, ¶ 28, and *Stavenjord I*, ¶ 12.  In *Henry*, we said:

> The State Fund misses the point. Regardless of the number of days or the mechanism by which a worker incurs an affliction, the fact remains that both classes of individuals have suffered work-related injuries, are unable to perform their former jobs, and need rehabilitation benefits to return to work. Both workers have as their sole source of redress the WCA or the ODA. . . . We conclude that the classes are similarly situated for equal protection purposes. ¶ 28.

The outcome of State Fund's subsequent argument that Stavenjord, a worker who suffered an occupational disease seeking redress under the ODA, was not similarly situated to injured workers seeking redress under the WCA, was plainly presaged.

¶14 Therefore, we conclude that the issue of first impression decided in *Stavenjord I* was, in the vernacular of *Dempsey* and *Schmill II*, "clearly foreshadowed." Consequently, the first of the three factors required to invoke *Chevron*'s exception to presumed retroactivity is not met. On this determination alone we could conclude that retroactive application of *Stavenjord I* is proper. Nonetheless, we note that analysis under *Chevron*'s second requirement also favors retroactive application. As articulated by the WCC, "Applying the decision retroactively promotes the rule of law announced in the decision by assuring that all persons denied their constitutional rights are treated equally." *Chevron* requires us to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Schmill II*, ¶ 13 (citations omitted). The purpose and effect of our ruling in *Stavenjord I* is clearly to provide equal protection under the law to partially disabled workers, regardless of whether they suffer an injury or from an occupational disease. Restricting *Stavenjord I*'s application to claims arising after our decision in that case furthers neither the purpose nor the effect of

8

our ruling. We see no justification for creating an "arbitrary distinction between litigants based merely on the timing of their claims." *Dempsey*, ¶ 28. Therefore, we conclude that *Chevron*'s second factor is not met. Accordingly, our decision in *Stavenjord I* will be applied retroactively subject to the limitations set forth below.

¶15 Next, we analyze whether the WCC's decision to order "partial" retroactive application of *Stavenjord I* was correct. We conclude it was not. There is no legal authority for "partial" retroactive application of *Stavenjord I*. The *Chevron* exception does not allow for "partial" retroactivity. Either *Chevron*'s factors are met—in which case prospective application is justified—or they are not. It bears repeating that this Court reserves the *Chevron* exception for "truly compelling" cases where retroactive application of a new rule would obfuscate justice. Here, State Fund has not cleared *Chevron*'s hurdle, and therefore *Stavenjord I* applies to any and all *open* claims arising on or after June 30, 1987, the date on which the offending statute, § 39-72-405(2), MCA (1997), took effect. For these purposes, "open claims" will encompass those which are still actionable, in negotiation but not yet settled, now in litigation, or pending on direct appeal.

¶16 Conversely, *Stavenjord I* does not apply to occupational disease-related PPD claims that became final by way of settlement or judgment prior to the issuance of this opinion. "New legal principles, even when applied retroactively, do not apply to cases already closed." *Dempsey*, ¶ 28, quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758, 115 S.Ct. 1745, 1751 (1995). In *Dempsey*, we weighed the interests of fairness against the need for finality in retroactive application of new rules, noting that

9

prospective application "creates an arbitrary distinction between litigants based merely on the timing of their claims" and concluding that "the line should be drawn between claims that are final and those that are not . . . ." ¶ 28. Therefore, we conclude that the WCC erred in ordering only partial retroactive application of *Stavenjord I* to cases arising on or after June 3, 1999. Rather, *Stavenjord I* shall apply retroactively to those claims arising on or after June 30, 1987, which remain "open" as herein defined. Occupational disease-related claims for PPD benefits previously finalized and closed by either court order, or settlement and release, may not be reopened for consideration under *Stavenjord I* or this Opinion.

## ISSUE TWO

¶17    *2.    Whether the WCC erroneously applied the date of maximum medical improvement as the entitlement date for retroactivity purposes.*

¶18    In light of our disposition of Issue One, we need not address this issue.

## ISSUE THREE

¶19    *3. Whether the WCC erroneously concluded that Stavenjord I created a common fund entitling Stavenjord's counsel to collect common fund fees from non-participating claimants benefiting from the decision.*

¶20    On cross-appeal, State Fund argues the WCC erred in concluding that *Stavenjord I* created a common fund. State Fund urges this Court to place judicial constraints on the common fund doctrine in the interests of policies underlying the WCA. Further, State Fund argues the common fund doctrine does not apply to every case in which a claimant receives a favorable ruling from this Court which may impact other claims. Stavenjord responds that application by the WCC of the common fund doctrine was correct, as the

10

doctrine provides the best available method for delivering unpaid PPD benefits to non-participating *Stavenjord* beneficiaries. Stavenjord further contends that she "easily" met the elements necessary for creating a common fund, and therefore her counsel is entitled to recover attorney fees from non-participating beneficiaries of the common fund in accordance with the common fund doctrine.

¶21 Generally, Montana follows the American Rule which obligates each party to civil actions to pay her own attorney fees unless statute, contract, or equity allows otherwise. *Mountain West Farm Bureau v. Hall*, 2001 MT 314, ¶ 13, 308 Mont. 29, ¶ 13, 38 P.3d 825, ¶ 13. This Court recognizes the common fund doctrine as an equitable exception to the American Rule. *See Means v. Montana Power Co.*, 191 Mont. 395, 403, 625 P.2d 32, 37 (1981) (expressly adopting common fund doctrine in Montana). The common fund doctrine is "rooted in the equitable concepts of quasi-contract, restitution and recapture of unjust enrichment," and aimed at properly compensating active litigants and their counsel whose efforts result in correcting an injustice and creating a fund in which other non-participating beneficiaries maintain an interest. *Means*, 191 Mont. at 403, 625 P.2d at 37.

¶22 Since the common fund doctrine's creation and earliest applications in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885), the United State Supreme Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of other persons is entitled to recovery of fees from the whole, therein preventing inequity by spreading fees proportionately among those benefited by the litigation. *Boeing Co. v. VanGemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980). The Supreme Court has instructed that the

11

common fund is applied appropriately where: (1) the classes of persons benefited by the lawsuits are small in number and easily identifiable; (2) benefits can be traced with some accuracy; and (3) the court has confidence the costs of litigation can indeed be shifted with some exactitude to those benefiting. *Boeing Co.*, 444 U.S. at 479, 100 S.Ct. at 749, citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 265, n. 39, 95 S.Ct. 1612, 1625, n. 39 (1975). Those characteristics which justify common fund fees are not present where litigants simply vindicate a general social grievance. *Alyeska Pipeline Serv. Co.*, 421 U.S. at 263-65, and n. 39, 95 S.Ct. at 1624-26, and n. 39.

¶23 The motivating principle underlying this Court's adoption of the common fund doctrine was to prevent unjust enrichment of non-participating claimants at the expense of active litigants and their counsel. *Murer v. State Comp. Mut. Ins. Fund*, 283 Mont. 210, 222, 942 P.2d 69, 76 (1997) (*Murer III*) (discussing rationale for adopting the common fund doctrine in *Means*, 191 Mont. 395, 625 P.2d 32). "The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the 'stranger' . . . beneficiaries do not receive their benefits at no cost to themselves." *Murer III*, 283 Mont. at 222, 942 P.2d at 76, quoting *Means*, 191 Mont. at 403, 625 P.2d at 37.

¶24 This Court has reduced to three elements the common fund doctrine's equitable underpinnings:

> There are three elements necessary to establish a common fund. First, a party, styled the active beneficiary, must create, reserve, preserve, or increase an identifiable monetary fund or benefit in which all active and non-participating beneficiaries have an interest. Second, the active

12

beneficiary must incur legal fees in establishing the common fund. Third, the common fund must benefit ascertainable, non-participating beneficiaries.

*Ruhd v. Liberty Northwest Ins. Corp.*, 2004 MT 236, ¶ 16, 322 Mont. 478, ¶ 16, 97 P.3d 561, ¶ 16, citing *Mountain West Farm Bureau.*, ¶¶ 15-18. We recently analyzed these elements and applied the common fund doctrine in several workers' compensation cases. *See Murer III,* 283 Mont. 210, 942 P.2d 69, *Rausch v. State Compensation Ins. Fund*, 2002 MT 203, 311 Mont. 210, 54 P.3d 25, *Flynn v. State Compensation Ins. Fund*, 2002 MT 279, 312 Mont. 410, 60 P.3d 397, and *Ruhd*, 2004 MT 236, 322 Mont. 478, 97 P.3d 561.

¶25 The elements for establishing a common fund are appropriately straightforward. Application of the doctrine is, however, not warranted in every case that establishes a new rule of law from which other claimants may derive a benefit. In *Murer III,* the earliest of our recent common fund worker' compensation cases, we emphasized that claimants there accomplished "significantly more than just the establishment of a favorable legal precedent. Additionally, claimants established a *vested right* on behalf of the absent claimants to directly receive immediate monetary payments of past due benefits underpayments; and based on the establishment of those vested rights, the State Fund became legally obligated to make the increased benefits payments." *Murer III*, 283 Mont. at 223, 942 P.2d at 76-77 (emphasis added). Similarly, in *Rausch*, the result of the claimant's efforts was the immediate payment of an undisputed impairment award, the payment of which would have otherwise been delayed until the respective claimants

reached retirement age. Thus, the dispute in *Rausch* centered not upon eligibility or amount of the benefit, but rather on the timing of the payment. ¶ 10.

¶26 In *Murer III*, we concluded that the common fund doctrine properly applied due in part to the certainty with which State Fund identified absent claimants and mathematically calculated the increased benefits to which absent claimants were entitled. (*See Murer v. State Compensation Mut. Ins.*, 267 Mont. 516, 885 P.2d 428 (1994) (*Murer II*) for the mandate underlying our discussion in *Murer III* regarding implementation of the common fund). As a result of our *Murer II* decision, State Fund: (1) identified absent claimants; (2) notified those claimants of their rights pursuant to *Murer II*; (3) calculated with *mathematical certainty* the increased benefits due each absent claimant; and (4) made payments to those claimants. *Murer III*, 283 Mont. at 223, 942 P.2d at 77 (emphasis added). State Fund was, "able to determine, *with certainty*, the number of absent claimants involved and the amount of money to which each individual claimant was entitled." *Murer* III, 283 Mont. at 223, 942 P.2d at 77 (emphasis added). As we noted in *Rausch*, at ¶ 48, quoting *Murer III*: "Those absent claimants will receive the benefit 'even though they were not required to intervene, file suit, risk expense, or hire an attorney.'" Thus, absent application of the common fund doctrine, both the *Murer* and *Rausch* beneficiaries would have reaped the benefits of protracted legal action at no expense to themselves, a classic example of the unjust enrichment specifically targeted by the common fund doctrine exception to the American Rule.

¶27 Here, by contrast, benefits due to non-participating *Stavenjord* beneficiaries will not be readily identifiable on superficial review of case files, nor can benefits due be calculated with certainty by way of a mathematical formula. The result of this case will not be that all eligible claimants will automatically be due a sum certain for unpaid PPD benefits. Rather, the parties here stipulated that it may be necessary for claimants' claim files to be updated or augmented in order to determine what PPD benefits each claimant is due under *Stavenjord I*. Thus, the "identifiable monetary fund or benefit" which the first of the three elements of the common fund doctrine requires is absent here. *See* ¶ 24, and *Ruhd*, ¶ 16. Moreover, because each claimant's situation will be unique, there will be no simple universal formula that can be applied to all non-participating claimants to determine to what additional money they are entitled. It also bears noting that many of these claimants are represented by counsel, and will require further assistance from their attorneys. A common fund reduction in fees to benefit Stavenjord's counsel would create a disincentive for non-participating claimants' counsel, and could thereby threaten a claimant's prospects for an aggressively negotiated benefit recovery.

¶28 We have previously said the common fund doctrine is applied properly where the potential economic returns from individual claims are insufficient to warrant litigation, and as a result wrongful acts go uncorrected. Application of the common fund doctrine is "especially appropriate" where "individual damage from an institutional wrong may not be sufficient from an economic viewpoint to justify the legal expense necessary to challenge that wrong." *Murer III*, 283 Mont. at 222-23, 942 P.2d at 76. Stavenjord's claim resulted in a $17,027.00 difference between the $10,000.00 in benefits to which she

15

was entitled under the ODA, and the $27,027.00 in PPD benefits to which we concluded she was entitled. *Stavenjord I*, ¶¶ 9-10. While we acknowledge that Stavenjord and her counsel likely incurred significant expense in pursuing her case through the appeal process, the fact is that eligible claimants *do* have the financial incentive to pursue *Stavenjord* benefits, provided they and their counsel expend the time and effort required to reap the benefit of our decision. Because more work remains to be done before most claimants may successfully obtain their respective *Stavenjord* benefits, the concern with unjust enrichment to non-participating beneficiaries that underlies the common fund doctrine's intended purpose is largely absent here. We therefore conclude that the WCC erred in determining that *Stavenjord I* created a common fund. Thus, Stavenjord's counsel is not entitled to recover fees from cases brought by other claimants in pursuit of *Stavenjord*-type PPD benefits.

## ISSUE FOUR

¶29 *4. Whether the WCC erroneously concluded that Stavenjord's counsel timely asserted a claim for common fund attorney fees.*

¶30 We have already determined that *Stavenjord I* did not create a common fund. As a result, we need not resolve this issue.

## CONCLUSION

¶31 For the foregoing reasons, we conclude the District Court erred regarding both partial retroactive application of *Stavenjord I* and creation of a common fund. We remand this case to the WCC for further proceedings to include the determination of an

16

appropriate procedure by which potential *Stavenjord* beneficiaries will be identified and notified of their interests related to increased *Stavenjord*-type PPD benefits.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS