DA 08-0407

**FILED**

December 22 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 430

CASSANDRA SCHMILL,

      Petitioner and Appellee,

  v.

LIBERTY NORTHWEST INSURANCE CORPORATION,
Respondent and Insurer, and MONTANA STATE FUND,
Intervenor, et al.,

      Respondents and Appellants.

APPEAL FROM:   Workers' Compensation Court,
Cause No. WCC No. 2001-0300
Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Oliver Hayes Goe, Leo S. Ward; Browning, Kaleczyc, Berry & Hoven,
P.C.; Helena, Montana (for Montana Municipal Insurance Authority and
Montana Schools Group Workers' Compensation Program)

        Steven W. Jennings (argued); Crowley, Haughey, Hanson, Toole &
Dietrich, PLLP; Billings, Montana (for Several Insurers/Appellants)

        Larry W. Jones; Liberty NW Insur. Corp.; Missoula, Montana (for Liberty
NW Ins. Corp.)

        Bradley J. Luck; Garlington, Lohn & Robinson, PC; Missoula, Montana
(for State Fund)

    For Appellee:

        Laurie Wallace (argued); Bothe & Lauridsen, PC; Columbia Falls,
Montana

              Argued:  May 20, 2009
         Submitted:  May 20, 2009
          Decided:  December 22, 2009

Filed:

      _____

                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Liberty Northwest Insurance Corporation and Intervenor Montana State Fund (Responding Insurers), et al., appeal from the order of the Workers' Compensation Court (WCC). We affirm.

¶2 The following issues are restated on appeal:

¶3 I. Does the enforcement of *Schmill I* and *Schmill II* violate the due process rights of the Responding Insurers?

¶4 II. Does Cassandra Schmill (Schmill) have standing to pursue global common fund benefits and an attorney fees lien on the fund?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 This is the third time we have seen this litigation. In *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 23, 315 Mont. 51, 67 P.3d 290 (*Schmill I*), we held that allowing for apportionment deductions for nonoccupational factors in the Occupational Disease Act (ODA) but not in the Workers' Compensation Act (WCA) constituted a violation of the equal protection guarantee in the Montana Constitution. *Schmill I*, ¶ 23. We held that the ODA's apportionment provisions in § 39-72-706, MCA, were unconstitutional. *Schmill I*, ¶ 23.

¶6 In the second appeal, *Schmill v. Liberty Northwest Ins. Corp.*, 2005 MT 144, ¶ 28, 327 Mont. 293, 114 P.3d 204 (*Schmill II*), we held that the decision in *Schmill I* is retroactive to all cases not yet final or settled at the time of its issuance. We further held that Schmill's attorneys properly requested common fund attorney fees and that the

common fund created in *Schmill I* results in a global lien for the benefit of all claimants affected by the decision. *Schmill II*, ¶ 28.

¶7     Six months after *Schmill II* was decided, the WCC issued summonses to more than 500 insurers regarding their obligation under *Schmill II* to identify and pay past *Schmill*-type claims. Responding Insurers comprise 96 of those insurers and self-insured employers. Responding Insurers moved to dismiss. The WCC referred these issues to Special Master Jay Dufrechou. On July 29, 2008, the WCC entered an "Order Adopting Order of Special Master," in which the WCC denied the Responding Insurers' motion and certified the issues as final for purposes of appeal pursuant to ARM 24.5.348(2). The Responding Insurers appeal.

## STANDARD OF REVIEW

¶8     We review the WCC's conclusions of law to determine whether they are correct. *Lanes v. Mont. State Fund*, 2008 MT 306, ¶ 16, 346 Mont. 10, 192 P.3d 1145; *Van Vleet v. Mont. Assn. of Counties Workers' Comp. Trust*, 2004 MT 367, ¶ 9, 324 Mont. 517, 103 P.3d 544. We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence. *Lanes*, ¶ 16; *Van Vleet*, ¶ 9. Substantial credible evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Lanes*, ¶ 16 (citing *S.L.H. v. State Comp. Mut. Ins. Fund*, 2002 MT 362, ¶ 42, 303 Mont. 364, 15 P.3d 948). If there is conflicting evidence, we consider whether "substantial evidence supports the Workers' Compensation Court,

3

not whether the evidence might support contrary findings." *Caekaert v. State Compen. Mut. Ins. Fund*, 268 Mont. 105, 110, 885 P.2d 495, 498 (1994).

## DISCUSSION

**¶9** ***Does the enforcement of Schmill I and Schmill II violate the due process rights of the Responding Insurers?***

**¶10** The Responding Insurers argue that the WCC's enforcement of *Schmill I* and *Schmill II* violates due process under the Montana and United States Constitutions. Responding Insurers argue that they were not named parties and were not given notice or opportunity to be heard when this Court found § 39-72-706, MCA, unconstitutional and when we determined that *Schmill I* created a global common fund. They aver that the summons, which they call "after-the-fact notice," failed to satisfy the requirements of due process.

**¶11** The WCC held that it is not the Responding Insurers' status as either a party or nonparty that determines their duty to pay benefits, but rather that a vested right exists for beneficiaries as a matter of law and imposes a corresponding duty on Responding Insurers to retroactively pay all *Schmill*-type benefits. We affirm.

**¶12** We addressed this type of vested right in *Murer*, in which we considered workers' compensation claims in relation to a temporary cap in benefits articulated in statute. *Murer v. State Comp. Mut. Ins. Fund*, 283 Mont. 210, 942 P.2d 69 (1997). We concluded that State Fund was "obligated to increase benefit payments to a substantial number of claimants who were neither parties to, nor directly involved in the *Murer* litigation."

4

*Murer*, 283 Mont. at 215, 942 P.2d at 72. We further held that "claimants established a vested right on behalf of the absent claimants to directly receive immediate monetary payment of past due benefits underpayments," and concluded the insurer "became legally obligated to make the increased benefits payments." *Murer*, 283 Mont. at 223, 942 P.2d at 76-77.

¶13 While *Murer* addresses a single insurer scenario, the decision establishes the principle that a right to past benefits due arises automatically. Once retroactivity is established, beneficiaries are not required to file a second claim. Qualifying individuals have already filed claims and are entitled to benefits under the statute, *regardless of which insurer they happen to be insured under*. The beneficiaries' right to increased benefits arises automatically and the same is true of all insurers' responsibility to pay each beneficiary.

¶14 This understanding of the relationship between insurers' statutory obligations and beneficiaries' automatically-vested rights is buttressed by our decisions following the *Murer* trilogy. We specifically considered retroactivity in *Ruhd v. Liberty NW Ins. Corp.*, 2004 MT 236, 322 Mont. 478, 97 P.3d 561. In the WCC case prompting *Ruhd*, a permanently and totally disabled claimant filed a petition for hearing before the WCC seeking payment of an impairment award from the insurer, Liberty Northwest. The WCC had previously concluded that permanently totally disabled claimants whose employers were insured by the State Fund were not entitled to impairment awards. *Rausch v. Mont. State Fund*, 2001 MTWCC 15. Both *Ruhd* and *Rausch* were appealed to this Court. We

5

reversed the WCC's decision in *Ruhd*, holding: "As soon as we decided *Rausch*, however, liability for immediate payment of impairment awards was established against *all insurers*." *Ruhd*, ¶ 22 (emphasis added).

¶15 The *Murer* and *Ruhd* holdings confirm that claimants have a vested right to payment of past due benefits, regardless of which insurer is responsible. Due process is not violated when a court construes the meaning of a statute applicable to all workers' compensation insurers bound by uniform laws. Once all potential beneficiaries are granted a vested right, which was manifested in *Schmill II*, a corresponding duty to pay on the part of all insurers arises automatically as a matter of law.

¶16 The Responding Insurers also argue that the parameters of "paid in full" are unclear. We decline to rule on this issue at the present time.

¶17 ***II. Did Schmill have standing to pursue a claim for common fund benefits and enforce a common fund attorney fees lien on the fund?***

¶18 Responding Insurers argue Schmill lacks standing because she does not allege a personal injury traceable to the Responding Insurers' conduct. The Insurers argue that all of Schmill's specific claims were resolved in *Schmill I* and she failed to appeal the WCC's decision regarding the award of attorney fees. While Schmill seeks to enforce common fund entitlements and the petitioner's attorney fees lien, Responding Insurers argue that she has no interest in the outcome of the former and no actual property interest in the latter. That interest, they aver, belongs to her counsel, Laurie Wallace.

6

¶19 Responding Insurers have misidentified the legal nature of a common fund attorney fees lien. Our *Schmill* decisions resulted not only in an entitlement to benefits, but an entitlement to payment of benefits owed. The common fund consists of *Schmill* claimants' benefits. By filing an attorney fees lien against this fund, Wallace initiated an in rem action. This is an action that simply adjudicates the status of a particular subject matter; here, the common fund from which the fees will be satisfied.

¶20 Schmill's standing to bring an in rem action to enforce the common fund attorney fees lien is reinforced by our *Murer* decision, in which we held: "[w]hen a party, through active litigation, creates a common fund which directly benefits an ascertainable class of non-participating beneficiaries, those non-participating beneficiaries can be required to bear a portion of the litigation costs, including reasonable attorney fees." *Murer*, 283 Mont. at 223, 942 P.2d at 76. The common fund includes benefits payable from all insurers who had previously apportioned occupational disease benefits. In essence, the lien does not simply attach to Schmill's benefits alone. It attaches to the entire common fund.

¶21 For the above reasons, we affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON