JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶1 The Claimant, Robert Flynn, filed a petition in the Workers’ Compensation Court for the State of Montana in which he alleged that the Respondent, State Compensation Insurance Fund, should pay a proportionate share of the attorney fees he incurred to recover social security disability benefits. Flynn also requested that the Court *412 sanction the State Fund for unreasonably reducing his temporary total disability benefits in an effort to recoup overpayments. The Workers’ Compensation Court denied both of Flynn’s claims and Flynn appeals. We affirm in part and reverse in part the judgment of the Workers’ Compensation Court.
¶2 We address the following issues on appeal:
¶3 1. Should the State Fund bear a proportionate share of the attorney fees incurred by Flynn to recover social security disability benefits based on the common fund doctrine?
¶4 2. Was the State Fund entitled to reduce Flynn’s workers’ compensation benefits to recover overpaid benefits?
FACTUAL BACKGROUND
¶5 On June 23, 1993, Robert Flynn was diagnosed with an occupational disease which developed as a result of repetitive work activities associated with his job at the Salish Kootenai College in Lake County, Montana. At all relevant times, the College was enrolled in Compensation Plan Number Three of the Workers’ Compensation Act and insured by the State Fund. Following his diagnosis, Flynn filed a claim for compensation and the State Fund accepted liability and tendered medical and temporary total disability (TTD) benefits to Flynn. Flynn has remained totally disabled since 1993 and the State Fund recently conceded that Flynn is permanently totally disabled (PTD).
¶6 Sometime prior to 1996, Flynn also filed a claim for social security disability (SSD) benefits. His claim was initially denied but later awarded retroactively by an administrative law judge for the Social Security Administration. On February 8, 1996, after learning of the SSD award, the State Fund advised Flynn that it was going to reduce his biweekly benefits from $336.00 to $217.59, effective February 7, 1996. The State Fund also notified Flynn that because of the retroactive application of the SSD award, it intended to recoup $14,006.25 in overpaid benefits by an additional offset against Flynn’s TTD benefits. However, the State Fund did not implement the offset ■until September of2000. As a result, Flynn was overpaid an additional $947.28.
¶7 On September 26,2000, the State Fund notified Flynn of its intent to recoup $14,984.58 and began deducting an additional $49.86 from Flynn’s weekly benefits. Flynn requested that the State Fund postpone its recoupment plan until May of 2001. The State Fund agreed to suspend the additional offset until April 24, 2001, at which time it would resume recoupment at the rate of $54.64 per week.
*413 ¶8 On October 30, 2000, Flynn filed a petition for hearing with the Workers’ Compensation Court. The petition requested that the Court: 1) order the State Fund to pay a proportionate share of the attorney fees incurred to recover the SSD benefits; and 2) sanction the State Fund for unreasonably and unlawfully reducing Flynn’s TTD benefits. On May 18, 2001, the Workers’ Compensation Court denied Flynn’s petition.
STANDARD OF REVIEW
¶9 The parties submitted an Agreed Statement of Facts to the Workers’ Compensation Court, and requested that the Court decide the legal issues presented by the parties. We review the Workers’ Compensation Court’s conclusions of law to determine whether they are correct. Matthews v. State Compensation Ins. Fund, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5.
DISCUSSION
ISSUE 1
¶10 Should the State Fund bear a proportionate share of the attorney fees incurred by Flynn to recover social security disability benefits based on the common fund doctrine?
¶11 Sometime prior to 1996, Flynn submitted a claim for SSD benefits which the Social Security Administration denied. Subsequently, Flynn incurred approximately $4,000 in attorney fees to recover those benefits. Flynn contends that the State Fund benefitted from his SSD award as much as he did because it can now reduce the disability benefits paid to him by one-half the amount of the SSD award, and that it should therefore bear a proportionate share of the $4,000 attorney fee based on the common fund doctrine.
¶12 The Workers’ Compensation Court rejected Flynn’s attorney fee claim for three reasons. First, it cited Stahl v. Ramsey Const. Co. (1991), 248 Mont. 271, 811 P.2d 546, for the proposition that no statutory or contractual authority supports Flynn’s apportionment claim. Second, the Court relied on Murer v. State Comp. Mut. Ins. Fund (1997), 283 Mont. 210, 942 P.2d 69, for its conclusion that the common fund doctrine “has no application here [because] Claimant is not seeking attorney fees for others who may benefit by this decision, rather he is seeking attorney fees with respect to his own entitlement.” Finally, the Court based its decision on statutory preemption. Citing ISC Distributors, Inc. v. Trevor (1995), 273 Mont. 185, 202, 903 P.2d 170, 180, the Workers’ Compensation Court held that “[w]here a conflict arises between the common law and a statute, the common law *414 must yield.”
¶13 In Stahl, the claimant incurred attorney fees to recover SSD benefits and the Social Security Administration withheld a percentage of the award for direct payment of his attorney fees. Following the claimant’s SSD award, the State Fund determined that it was entitled to offset its future payment of benefits to account for the retroactive SSD award. The claimant contended that since he had not received the amount withheld for fees, it should not be included in the overpayment calculation.
¶14 This Court denied Stahl’s request to, in effect, apportion costs and attorney fees because no statutory or contractual authority existed for doing so. Stahl, 248 Mont. at 275, 811 P.2d at 548. However, Stahl presented a different theory for relief than is presented by Flynn. Stahl did not argue for application of the common fund doctrine. Therefore, this Court did not analyze the applicability of the common fund doctrine in Stahl. Accordingly, Stahl is not dispositive.
¶15 Generally, the common fund doctrine authorizes assigning responsibility for fees among those individuals who benefit from the litigation which created the common fund. See Morris B. Chapman & Assocs., LTD. v. Kitzman (Ill. 2000), 739 N.E.2d 1263, 1271. The doctrine entitles the party who created the fund to reimbursement of his or her reasonable attorney fees from the common fund. Murer, 283 Mont. at 223, 942 P.2d at 76. Recently, in Mountain West Farm Bureau v. Hall, 2001 MT 314, ¶¶ 15-18, 308 Mont. 29, ¶¶ 15-18, 38 P.3d 825, ¶¶ 15-18, we summarized the elements of the common fund doctrine as follows: 1) an active beneficiary must create, reserve, or increase a common fund; 2) the active beneficiary must incur legal fees in establishing the common fund; and 3) the common fund must benefit ascertainable, non-participatingbeneficiaries. We enforce this doctrine because equity demands that all parties receiving a benefit from the common fund share in the cost of its creation. See Means v. Montana Power Co. (1981), 191 Mont. 395, 405, 625 P.2d 32, 38.
¶16 With the aid of counsel, Flynn recovered SSD benefits in the approximate amount of $1000 per month. It is uncontroverted that Flynn incurred attorney fees to recover this award. This SSD award enabled the State Fund to reduce Flynn’s weekly TTD benefits, and subsequent PTD benefits, by “one-half the federal periodic benefits for the week” pursuant to §§ 39-71-701(5) and -702(4), MCA. As a result of Flynn’s litigation efforts, funds were recovered which accrued to the substantial benefit of the State Fund. While the State Fund reaped the benefit of Flynn’s efforts, it was not required to intervene, risk expense, or hire an attorney throughout the litigation proceedings. *415 Consequently, we hold that Flynn’s SSD award constitutes an existing, identifiable monetary fund or benefit in which an ascertainable, nonparticipating beneficiary maintains an interest.
¶17 The Workers’ Compensation Court correctly cited the general rule of statutory preemption. We agree that the common law is preempted where the law is statutorily declared. See § 1-1-108, MCA; Brewington v. Employers Fire Ins. Co. (1999), 297 Mont. 243, 248, 992 P.2d 237, 241. However, the Workers’ Compensation Act is silent on the issue of attorney fee apportionment following benefit recoupment. Therefore, there exists no statutory declaration which preempts the equitable principles of the common fund doctrine.
¶18 Accordingly, pursuant to the common fund doctrine, the State Fund should contribute, in proportion to the benefits it actually received, to the costs of the litigation, including reasonable attorney fees. The Workers’ Compensation Court erred when it denied Flynn’s request for reasonable apportionment of attorney fees. To the extent it declined to apply the common fund doctrine, the judgment of the Workers’ Compensation Court is reversed.
ISSUE 2
¶19 Was the State Fund entitled to reduce Flynn’s workers’ compensation benefits to recover overpaid benefits?
¶20 In 1993 the Legislature amended §§ 39-71-701 and -702, MCA, to authorize insurers to suspend biweekly compensation benefits to recover overpayment from those claimants who receive social security benefits. However, the law in effect at the time of a work-related injury governs the determination of workers’ compensation benefits and the respective rights of the insurer and employer. Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Flynn was diagnosed with the occupational disease in June of 1993, prior to the amendments’ July 1, 1993, effective date. Therefore, the 1991 version of the Workers’ Compensation Act governs the disposition of Flynn’s claim.
¶21 Flynn cites State ex rel. Mazurek v. District Court, 2000 MT 266, ¶ 18, 302 Mont. 39, ¶ 18, 22 P.3d 166, ¶ 18, for the proposition that when the Legislature amends a statute, this Court will presume that it intended to implement some change in the existing law. Flynn argues that the Legislature’s 1993 amendments imply that an insurer’s unfettered right of recoupment did not exist prior to July 1, 1993. Relying on a 1993 judgment from the Workers’ Compensation Court, Flynn insists that prior to July 1, 1993, an insurer could not unilaterally suspend benefits to recoup overpayments absent a court *416 order or the injured claimant’s consent. Flynn maintains that the State Fund had neither and, therefore, was not entitled to terminate or reduce his benefits to recover an alleged overpayment.
¶22 The Workers’ Compensation Court rejected Flynn’s characterization of the state of the law on overpayment recoupment in 1991. In so doing, the Court stated:
The [Mackney] decision ... lends no support whatsoever to the claimant’s position. There is nothing in the decision stating that an insurer cannot unilaterally reduce a claimant’s benefits to recoup a SSD offset.... The law is clear that an insurer is entitled to offset SSD benefits. That law puts claimants on notice that if they receive retroactive benefits, the offset will apply.
Claimant, however, urges that ... an insurer lacked authority prior to July 1,1993, to unilaterally reduce benefits to recoup the offset. The argument is without merit. The new [amendments] sanction suspension of all benefits to recoup the offset, which is the most extreme possible method of recoupment. There is nothing in the adoption of the section indicating that the legislature believed that insurers were prohibited from lesser measures of recoupment, and nothing in the prior statutes which precluded such lesser measures.
¶23 The 1991 Workers’ Compensation Act authorized insurers to offset benefit distributions on account of an SSD award in § 39-71-701(5), MCA (1991), which provided:
In cases where it is determined that periodic disability benefits granted by the Social Security Act are payable because of the injury, the weekly benefits payable under this section are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits for such week, which amount is to be calculated from the date of the disability social security entitlement.
The purpose of the workers’ compensation offset statutes is to prevent duplication of disability pay. Watson v. Seekins (1988), 234 Mont. 309, 314-15, 763 P.2d 328, 332. Prior to 1993, the Workers’ Compensation Act failed to address the recovery of prior payments which become duplicate by virtue of a subsequent retroactive SSD award. However, what once was a procedural vacuum has now been statutorily defined. Nevertheless, the 1993 legislative enactments do not transform the prior silence into a prohibition on recovery of overpayments.
¶24 Had the Social Security Administration accepted Flynn’s initial claim, the State Fund could have reduced its weekly payments *417 pursuant to § 39-71-701(5), MCA. (1991), from the time payments commenced. The fact that Flynn’s SSD award was delayed should not preclude offset for the same amount. To accept Flynn’s construction of the 1991 Workers’ Compensation Act would be to frustrate the policy against double recovery. Therefore, we conclude that the State Fund was entitled to suspend a portion of Flynn’s benefits to recover the alleged overpayment.
¶25 Because the State Fund was entitled to offset Flynn’s benefits, and the 1991 Workers’ Compensation Act provides no methodology for recovering overpaid benefits, the only remaining question is whether the method employed by the State Fund was reasonable. In analyzing this same issue, the Workers’ Compensation Court concluded:
An insurer has an obligation to act reasonably with regard to payment of benefits. I do not determine that an insurer’s unilateral offset for overpayments is in every case reasonable. I only determine that it is not per se unreasonable for an insurer to recoup overpayments despite a claimant’s objections. In this case, claimant has not presented sufficient evidence to persuade me that the State Fund’s offset for recoupment was unreasonable. [Citations omitted.]
We agree that nothing in the record indicates that the State Fund acted unreasonably in offsetting Flynn’s benefits. Therefore, the Workers’ Compensation Court did not err when it concluded that the State Fund was entitled to reduce Flynn’s disbursements to the extent that it did to recover overpaid benefits.
¶26 The judgment of the Workers’ Compensation Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
JUSTICES NELSON, COTTER and REGNIER concur.
JUSTICE LEAPHART did not participate in this Opinion.