DA 06-0734

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 394

ROBERT FLYNN and CARL MILLER, Individually
and on Behalf of Others Similarly Situated,

      Petitioners and Appellees,

  v.

MONTANA STATE FUND,

      Respondent/Insurer and Appellant,

  and

LIBERTY NORTHWEST INSURANCE
CORPORATION,

      Intervenor and Appellant.

APPEAL FROM:    Workers' Compensation Court
                 Cause No. WCC 2000-0222
                 Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Steven W. Jennings; Crowley, Haughey, Hanson, Toole & Dietrich,
                PLLP; Billings, Montana

                Larry W. Jones, Law Offices of Larry W. Jones; Missoula, Montana

                Shane McGovern, Geoffrey R. Keller; Matovich & Keller, P.C.;
                Billings, Montana

                Bradley J. Luck; Garlington, Lohn & Robinson; Missoula, Montana

        For Appellees:

                Rexford L. Palmer; Attorneys Inc., P.C.; Missoula, Montana

Submitted on Briefs:  January 23, 2008

Decided:  November 25, 2008

Filed:

_____

                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Appellants Montana State Fund, Liberty Northwest Insurance Corp., and certain "Common Fund Insurers" (collectively State Fund) appeal from the order of the Workers' Compensation Court (WCC).  We affirm in part and reverse in part.

¶2      We restate the issues on appeal as follows:

¶3      1.  Did the WCC err by refusing to apply judicial decisions retroactively to only claims in "active" litigation?

¶4      2.  Did the WCC err in its final definition of a "settled" claim?

¶5      3.  Did the WCC err when it concluded that the terms "closed" and "inactive" were not included in our *Schmill II* directive?

¶6      4.  Did the WCC err by refusing to impose a two-year limit on the retroactivity of judicial decisions for workers' compensation claims?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7      This is the second time this case has been before us.  In *Flynn v. State Compensation Ins. Fund*, 2002 MT 279, 312 Mont. 410, 60 P.3d 397 (*Flynn I*), we held that after a claimant successfully recovers social security disability benefits, thereby allowing the State Fund or other workers' compensation insurer to offset benefits paid to the claimant, the insurer, pursuant to the common fund doctrine, must bear a proportionate share of the costs and attorney fees incurred by the claimant in pursuing social security benefits.  *Flynn I*, ¶¶ 16-18.  Accordingly, we reversed the WCC's judgment to the extent it declined to apply the common fund doctrine to Flynn's request

2

for reasonable apportionment of attorney fees. *Flynn I*, ¶ 18. On remand, the WCC determined that the holding in *Flynn I* applied retroactively and that Flynn's attorney was "entitled to common fund attorney fees from claimants who benefited from the decision." That decision is not appealed here.

¶8 Thereafter, in *Schmill v. Liberty Northwest Ins. Corp.*, 2005 MT 144, 327 Mont. 293, 114 P.3d 204 (*Schmill II*), we concluded that our decision in *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, 315 Mont. 51, 67 P.3d 290 (*Schmill I*) applied retroactively. However, in reliance on our decision in *Dempsey v. Allstate Ins. Co.*, 2004 MT 391, 325 Mont. 207, 104 P.3d 483, we recognized that "retroactive application does not mean that prior contrary rulings and settlements are void *ab initio*." *Schmill II*, ¶ 17. Rather, the policy of finality dictates that "'retroactive effect of a decision . . . does not apply to cases that became final or were settled prior to a decision's issuance.'" *Schmill II*, ¶ 17 (quoting *Dempsey*, ¶ 31) (ellipsis in original). We recognized that many "claims are settled, closed, or inactive" but indicated that we could not determine from the record which claims in the context of workers' compensation law should be considered "final or settled." *Schmill II*, ¶ 19. Accordingly, we left "that initial determination to the WCC." *Schmill II*, ¶ 19. The WCC thereafter informed all parties involved in common fund cases via email that it would "use *Flynn* as a general model for determining the *final, closed, or inactive issue*" remanded in *Schmill II*, and invited their participation.

¶9 On September 29, 2006, the WCC issued its "order determining status of final, settled, closed, and inactive claims" (*Flynn* Order). The WCC explained that our explicit

3

direction in *Schmill II* was for it to determine the definition of "final" and "settled" claims. The WCC stated that it would not define "closed" and "inactive" claims because the *Schmill II* directive did not include those terms. The WCC defined a "final" claim as a "claim in which a final judgment has been entered by the Workers' Compensation Court only if the claim is not currently pending on appeal." This definition of "final" is not an issue on appeal. In defining a "settled" claim, the WCC reasoned that § 39-71-107(7)(a), MCA (2005), provided a "clear definition" of the term. Further reasoning that it was not its function "to rewrite what the legislature has already defined," the WCC concluded that the statute's definition defining a settled claim as "'a department-approved or court-ordered compromise of benefits between a claimant and an insurer or a claim that was paid in full' shall be the definition of a 'settled claim.'" However, in a recap of its holding at the end of its order, the WCC stated that "A SETTLED CLAIM is a claim in which a department-approved settlement or court-ordered compromise of benefits has been made between the claimant and insurer," omitting the phrase "or a claim that has been paid in full" which it had previously adopted in its analysis.

¶10     Eight days after the *Flynn* Order was issued we decided *Stavenjord v. Mont. State Fund*, 2006 MT 257, 334 Mont. 117, 146 P.3d 724 (*Stavenjord II*). There, we overruled a WCC order establishing "partial" retroactivity of our decision in *Stavenjord v. Mont. State Fund*, 2003 MT 67, 314 Mont. 466, 67 P.3d 229 (*Stavenjord I*). *Stavenjord II*, ¶ 15. We concluded that there is "no legal authority for 'partial' retroactive application" of judicial decisions and stated that judicial decisions apply retroactively to "any and all

4

*open* claims . . . ." *Stavenjord II*, ¶ 15 (emphasis in original). We stated that "open claims" are those which are "still actionable, in negotiation but not yet settled, now in litigation, or pending on direct appeal." *Stavenjord II*, ¶ 15.

¶11 The State Fund appeals from the *Flynn* Order.

## STANDARD OF REVIEW

¶12 We review the WCC's conclusions of law for correctness. *Schmill II*, ¶ 11.

## DISCUSSION

¶13 **1. Did the WCC err by refusing to apply judicial decisions retroactively to only claims in "active" litigation?**

¶14 State Fund argues that the WCC erred by rejecting its argument that "judicial decisions can only apply retroactively to those claims that are currently in active litigation." State Fund contends the WCC incorrectly interpreted our decision in *Dempsey*, and posits that an inconsistency in language it detects between our opinion in *Dempsey* and the U.S. Supreme Court's opinion in *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 113 S. Ct. 2510 (1993), explained below, was unintended. Accordingly, State Fund urges us to "formally adopt the exact *Harper* 'on direct review' language" as the boundary of retroactivity.

¶15 In *Dempsey*, we established our current rule for the retroactivity of judicial decisions and discussed the history of the issue, focusing on two United States Supreme Court decisions: *Harper* and *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349 (1971). *Dempsey*, ¶¶ 16-23. We explained that the *Harper* decision effectively replaced *Chevron Oil* in federal courts, holding that federal law "must be given full retroactive

5

effect in all cases still open on direct review. . . ." *Dempsey*, ¶ 23 (quoting *Harper*, 590 U.S. at 97, 113 S. Ct. at 2517). However, because each state is permitted to establish its own rules for retroactivity, *see Great N. Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364-66 (1932), state courts had continued to follow the flexible *Chevron Oil* approach that required retroactivity unless one of three exceptions was met.

¶16 We reached a compromise in *Dempsey* between the strict *Harper* rule and the flexible *Chevron Oil* rule, holding that "all civil decisions of this Court apply retroactively to cases pending on direct review or not yet final, unless all three of the *Chevron* factors are satisfied."[1] *Dempsey*, ¶ 31. We also concluded that, for reasons of finality, the "retroactive effect of a decision does not apply . . . to cases that became final or were settled prior to a decision's issuance." *Dempsey*, ¶ 31.

¶17 State Fund asserts that the difference between *Harper*'s "open on direct review" and *Dempsey*'s "pending on direct review or not yet final" was an unintended change for which "this Court did not provide any reasoning . . . ." State Fund offers that this Court

---

[1] The three Chevron factors are:
> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigant may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for 'where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.'

*Dempsey*, ¶ 21 (quoting *Chevron Oil*, 404 U.S. at 106-07, 92 S. Ct. at 355) (ellipsis in original).

6

"could not have predicted how its minor rephrasing of *Harper* could take on the significance the WCC gave it in its *Flynn* Order" and therefore asks us to clarify our *Dempsey* decision by adopting the exact language employed by the U.S. Supreme Court in *Harper*.

¶18 However, contrary to State Fund's perception that we did not consider the impact of "rephrasing" the *Harper* rule, the language we used in *Dempsey* was not an accident. We explained in *Dempsey* that the new rule on retroactivity was intended to be a compromise between *Harper* and *Chevron Oil* and that, while we agreed with *Harper*'s balancing of finality and fairness interests, we opted to not follow the exact *Harper* rule because of "the compelling need for prospective application in limited circumstances." *Dempsey*, ¶ 27. Accordingly, we decline State Fund's invitation to revise the statement of retroactivity set forth in *Dempsey* and to adopt the exact *Harper* rule.

¶19 Alternatively, State Fund argues that our decision in *Stavenjord II* requires modification of the *Flynn* Order. State Fund contends that under *Stavenjord II* the WCC incorrectly rejected the argument made by State Fund in this case that "judicial decisions can only apply retroactively to those claims that are currently in active litigation." State Fund invites us to make "judicial decisions retroactively applicable only to 'open' workers' compensation claims" and to define "open" as "in negotiation but not yet settled, now in litigation or pending on direct appeal"—the same language used in *Stavenjord II*, ¶ 15. State Fund thus reasons that use of the language in *Stavenjord II* would render the *Flynn* Order unnecessary.

¶20 State Fund's argument illustrates that there is an apparent conflict between our decisions in *Stavenjord II* and *Schmill II*. *Schmill II* applied *Schmill I* retroactively to all claims except those that are "final" or "settled," *Schmill II*, ¶ 19, whereas *Stavenjord II* retroactively applied *Stavenjord I* to all "open" claims. *Stavenjord II*, ¶ 15. While these definitions are presumably different sides of the same coin, we can see the need for clarity and consistency in the statement of the rule.

¶21 *Schmill II* was the first case which addressed the question of retroactivity for purposes of workers' compensation law and our intention there was to clarify the application of the *Dempsey* rule in that context. *Schmill II*, ¶ 9. *Stavenjord II* did not purport to expand upon or clarify the law with regard to retroactivity and no authority was cited for its statement that *Stavenjord I* would apply to "open" claims. *Stavenjord II*, ¶ 15. Therefore, it was not our intention in *Stavenjord II* to alter our retroactivity analysis as previously set forth by *Dempsey* and *Schmill II* and, in reality, *Stavenjord* created no new law, but merely stated our retroactivity rule in an inverse fashion: "open" simply meant "not final." We therefore conclude that application of the retroactivity rule as stated in *Stavenjord II* though stated inversely, conveyed the same meaning, and that the *Flynn* Order is unaffected by our decision therein. We reaffirm the retroactivity principles set forth in *Dempsey* and *Schmill II*—applicable to cases not "final" or "settled"—for purposes of this and future cases.

¶22 **2. Did the WCC err in its final definition of a "settled" claim?**

8

¶23    State Fund next argues that if we maintain the *Dempsey* or *Schmill II* language excluding "final" and "settled" claims from judicial retroactivity, then we should also use the statutory definition of "settled" set forth in the analysis section of *Flynn* Order, rather than as re-stated at the end of the *Flynn* Order. This would include the statutory language defining settled claims as "paid in full." Appellees Robert Flynn and Carl Miller (Flynn/Miller) argue that including "paid in full" claims as settled is "illogical" because § 39-71-107(7), MCA, is limited to the "purposes of [that] section."

¶24    As previously noted, the *Flynn* Order set forth inconsistent definitions. The WCC reasoned that "§ 39-71-107(7)(a), MCA, sets forth a clear definition of what constitutes a 'settled claim.'" Reasoning that its function was not "to rewrite what the legislature has already defined", it concluded that "the language of § 39-71-107(7)(a), MCA (2005), defining a 'settled claim,' as 'a department-approved or court-ordered compromise of benefits between a claimant and an insurer or a claim that was paid in full,' shall be the definition of 'settled claim' for purposes of this case." However, in contrast, after discussing other issues, the WCC concluded its order by re-stating all of its holdings, including on this issue: "[T]herefore, this Court orders: A SETTLED CLAIM is a claim in which a department-approved settlement or court-ordered compromise of benefits has been made between the claimant and insurer." Notably, this statement omits the previously adopted statutory language which stated that "a claim paid in full" is a "settled claim."

9

¶25 The WCC reasonably relied upon the definition of "settled claim" as provided by the legislature in § 39-71-107(7)(a), MCA (2005). Flynn/Miller's argument against the WCC's adoption of this statutory definition of "settled claim" is unpersuasive. Although the definition includes the phrase "for purposes of this section," it is found within the part containing the generally applicable provisions of the Workers' Compensation Act (the Act), including the list of many definitions applied in the Act. *See* § 39-71-116, MCA (2005). Further, § 39-71-107, MCA, in which the definition of "settled claim" is located, includes provisions which are necessarily applicable to all settled claims. Considering this statutory structure, including the absence of any other statutory definition of the term, we cannot conclude that an "intention plainly appears" to prohibit other uses of this definition within the Act. Section 1-2-107, MCA. Rather, using the definition provided by the legislature furthers the expression of legislative will absent a contrary indication and further provides consistency between the retroactivity of judicial decisions established by our cases and the application of the Act.

¶26 The *Flynn* Order offers no rationale for the distinction between the definition adopted in its rationale and the one stated at the end of its order. Given the WCC's thorough analysis and expressly stated intent to adopt the legislature's definition of "settled claim," we can imagine no reason other than scrivener's error for the inconsistency. Accordingly, we reverse the *Flynn* Order to the extent that the definition of "settled claim" at the end of its order holding varies from the statutory definition as stated and adopted by the WCC in its analysis of that issue. To clarify, a "settled" claim

is "a department-approved or court-ordered compromise of benefits between a claimant and an insurer or a claim that was paid in full." Section 39-71-107(7)(a), MCA (2005).

¶27 **3. Did the WCC err when it concluded that the terms "closed" and "inactive" were not included in our *Schmill II* directive?**

¶28 State Fund next asserts that the WCC erred by not excluding "closed" and "inactive" claims from the retroactivity of *Flynn*. State Fund contends that in *Schmill II* this Court "minimized the potential effect of retroactivity based on [the] understanding that many claims would be 'settled, closed or inactive[.]'" Therefore, based on *Schmill II*, State Fund argues that the WCC should have defined "closed" and "inactive" claims and held that they are also exempt from the retroactivity of judicial decisions. State Fund asks us to "either give effect to the terms 'closed' and 'inactive,' create definitions of 'settled' and 'final' that encompass such claims, or revisit the substantial inequity concerns . . ."

¶29 Flynn/Miller argues that the WCC appropriately refused to define the terms "closed" and "inactive." They assert that the WCC correctly decided that these terms are often defined by insurers and that "[g]iving force to an insurer's internal policies or unilateral decision that a claim is 'inactive' and should be 'closed' invites untold mischief." Ultimately, Flynn/Miller contends that the insurers are "dissatisfied" and that "no 'fine tuning' will satisfy" them.

¶30 In its *Flynn* Order, the WCC considered whether to define the terms "closed" and "inactive." The WCC concluded that the mandate from *Schmill II* was for it to "determine which claims, in the context of workers' compensation law, would be

11

considered 'final' or 'settled.'" This conclusion by the WCC was correct. In *Schmill II*, we specifically directed the WCC to define the terms "final" and "settled." *Schmill II*, ¶ 19. While we referenced "closed" and "inactive" claims, our directive did not include those terms. *Schmill II*, ¶ 19. Accordingly, we affirm the WCC's decision. Retroactivity for workers' compensation claims is dependent upon whether a claim is "final" or "settled."

¶31 **4. Did the WCC err by refusing to impose a two-year limit on the retroactivity of judicial decisions for workers' compensation claims?**

¶32 State Fund's final argument is that the WCC erred by refusing to adopt the two-year statute of limitations from § 39-71-2905, MCA (2005), as a limit on the retroactive effect of judicial decisions in workers' compensation claims. That statute provides that "[a] petition for hearing before the workers' compensation judge must be filed within 2 years after benefits are denied." Section 39-71-2905(2), MCA. State Fund contends that there is a "strong public policy . . . against applying judicial decisions retroactively to all workers' compensation claims." State Fund reasons that while § 39-71-2905, MCA (2005), "explicitly applies only to claims where benefits have been denied, . . . the existence of this statute indicates the legislature viewed two years as the maximum reasonable period for a workers' compensation claimant to sit on his or her rights without attempting to vindicate them." Accordingly, State Fund argues by analogy that a claimant who has accepted a benefit determination should not "enjoy the full retroactive effect of a newly-issued judicial decision" if that decision occurs two years after the benefit was determined. Flynn/Miller responds that a "creation of statutes of limitation is

exclusively within the province of the legislature, as constrained by the constitution" and is therefore not "the Court's job."

¶33    While we recognize the advantage of finality and the ease of administration that an adoption of a two-year limitation on retroactivity would serve, we refuse to adopt such a limit by analogizing to a statute which the legislature has made applicable only to particular cases. As State Fund concedes, "there is no specific statutory cutoff point for most workers' compensation claims." Accordingly, application of the two year statute of limitation here would require this Court to take liberty with § 39-71-2905, MCA (2005), by extending it beyond the legislature's clearly intended purpose, as evident by its plain language. As we stated in *Dempsey*, the interests of fairness and finality are not generally served by drawing "an arbitrary distinction between litigants based merely on the timing of their claims." *Dempsey*, ¶ 28. Therefore, we conclude that the WCC correctly refused to impose the two-year statute of limitations set forth in § 39-71-2905, MCA (2005).

¶34    Affirmed in part and reversed in part.


/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

/S/ JULIE MACEK
Hon. Julie Macek, District Judge,
sitting for Justice Patricia O. Cotter

13

/S/ GREGORY R. TODD
Hon. Gregory R. Todd, District Judge,
sitting for Justice James C. Nelson