FILED

November 1 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0208

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 272

LEXIE LaMERE and VIRGIL HENDERSON,

 Plaintiffs and Appellants,

 v.

FARMERS INSURANCE EXCHANGE,

 Defendant and Appellee.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV-06-466(b)
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

  Benjamin R. Graybill, Graybill Law Firm, P.C., Great Falls, Montana

  Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

 For Appellee:

  David C. Dalthorp, Gough, Shanahan, Johnson & Waterman, PLLP,
Helena, Montana

    Submitted on Briefs: October 12, 2011

       Decided: November 1, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Lexi[1] LaMere is Virgil Henderson's daughter. In 2001, Lexi was seriously injured in an automobile accident caused by an uninsured motorist. Henderson and members of his household, including Lexi, were insured by two Farmers Insurance Exchange (Farmers or FIE) automobile insurance policies, each providing uninsured motorist protection of $25,000. In late 2001, in exchange for a full release signed by Lexi, Farmers paid $25,000 in uninsured motorist coverage under Henderson's policy insuring the vehicle involved in the accident. In April 2006, Lexi and her father sued FIE seeking uninsured motorist benefits under Henderson's second policy. The Eighth Judicial District Court entered summary judgment in favor of FIE. Lexi and Henderson appeal. We affirm.

**ISSUES**

¶2 A restatement of the issues is:

¶3 Did the District Court err in dismissing Lexi and Henderson's claim for stacking of uninsured motorist coverages?

¶4 Did the District Court err in ruling that neither Lexi nor Henderson had standing to bring a claim for medical pay coverage?

¶5 Did the District Court abuse its discretion when it declined to certify a putative class for claims of unjust enrichment and disgorgement of premiums?

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] The parties use "Lexie" and "Lexi" interchangeably; because Lexi signed her Release of All Claims "Lexi LaMere," we use that spelling throughout this Opinion.

3

¶6 In 2001, Lexi Henderson was a passenger in a truck owned by her father, Virgil Henderson, but driven by her then-boyfriend, now-husband, Aaron LaMere. Aaron was uninsured. Through Aaron's negligence, the couple had an accident and Lexi was seriously injured. Lexi was living at home at the time and was insured under her father's FIE policies. Henderson had a policy on the truck in which Lexi had been riding (Policy #58) and on a second newer truck (Policy #59). Both of Henderson's liability policies with Farmers contained uninsured motorist (UM) as well as underinsured motorist (UIM) coverage but neither contained medical payment coverage.

¶7 Lexi made a UM claim against the FIE policy insuring the wrecked truck and on November 27, 2001, in exchange for a release of all claims arising from the accident, FIE settled Lexi's claim by paying the UM policy limit of $25,000. At the time of this settlement, both the terms of the insurance policy and the then-current law prohibited the "stacking" of insurance coverage.[2] Five years later—in April 2006—Lexi sued Farmers seeking to stack the UM coverage contained in Policy #59 on top of the UM coverage she received under Policy #58. Farmers issued a second check to Lexi in December 2006 in the amount of $25,000, the UM policy limit under Policy #59.

¶8 In their second amended complaint filed in February 2007, relying on *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, Lexi and Henderson requested declaratory judgment that they and similarly situated policyholders

---

[2] Stacking of insurance policies refers to adding the policy limit of UM, UIM, or medical pay coverage from an insurance policy on one vehicle with the UM, UIM, or medical pay policy limits from a policy on another vehicle. In other words, adding the coverage limits provided in insurance policies of two or more vehicles.

4

were entitled to stack "uninsured, underinsured, and medical payment coverages." Lexi asserted she was entitled to reopen her settled claim and pursue additional damages. They also claimed that Farmers: (1) was being unjustly enriched by collecting premiums but refusing to provide full benefits under multiple policies; (2) had breached its contract with Henderson and Lexi by refusing to pay benefits for which it received consideration; (3) had breached the implied covenant of good faith and fair dealing; and (4) had exercised bad faith. Additionally, they claimed that Lexi's release constituted a unilateral mistake of law. Lexi and Henderson sought to bring all of these claims as a class action on behalf of themselves and other similarly situated policyholders.

¶9 In October 2008, FIE moved for partial summary judgment on Lexi and Henderson's claim for declaratory relief. Farmers also sought summary judgment on Lexi and Henderson's claims pertaining to entitlement to medical payments on the grounds that Henderson's policies did not have medical payment provisions and Lexi and Henderson had never asserted medical pay claims against Farmers. FIE argued that neither Lexi nor Henderson had standing to bring claims based upon medical payment coverage personally or as class representatives.

¶10 In January 2009, following a hearing on Farmers' motion for partial summary judgment, the District Court granted FIE's motion as to all claims pertaining to stacking and standing; thus, the only remaining claim was for unjust enrichment. The basis for the court's ruling on stacking issues was that Lexi had settled her claim prior to our decision in *Hardy*; therefore, *Hardy* did not apply retroactively to her claim. It also held that Lexi

5

and Henderson had no standing to pursue any claims related to medical pay since they never paid premiums for or obtained medical pay coverage.

¶11 In June 2009, Lexi and Henderson moved to certify a class to pursue a class action against Farmers for its alleged unjust enrichment derived from failing to pay stacking claims on UM, UIM, and/or medical payment coverages. In February 2011, after a hearing to address various outstanding motions, the District Court denied the motion to certify the class. The District Court determined neither Lexi nor Henderson were members of the class they sought to certify and represent.

¶12 Lexi and Henderson filed a timely appeal from the District Court's order granting Farmers' motion for partial summary judgment and the court's order denying their motion to certify a class.

## STANDARD OF REVIEW

¶13 We review summary judgment rulings de novo. Applying the same M. R. Civ. P. 56 criteria as the district court, we determine whether the moving party has established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. We review a district court's conclusions of law for correctness. We review a district court's findings of fact to determine whether they are clearly erroneous. *Weaver v. Advanced Refrigeration*, 2011 MT 174, ¶ 8, 361 Mont. 233, 257 P.3d 378 (citation omitted).

¶14 We review a district court's decision on a motion for class certification for an abuse of discretion. *Hop v. Safeco Ins. Co.*, 2011 MT 215, ¶ 9, 361 Mont. 510, ___ P.3d ___ (citation omitted).

6

## DISCUSSION

¶15 *Did the District Court err in dismissing Lexi and Henderson's claim for stacking of uninsured motorist coverages?*

¶16 In 2001, at the time of Lexi's accident, § 33-23-203, MCA (2001), the anti-stacking statute was in full force and effect. It provided:

> **Limitation of liability under motor vehicle liability policy.** (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:
>
> .  .  .
>
> (c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of the insurance coverages available under the policy or policies for any one accident.

¶17 As a result of this statute and the anti-stacking language contained in Henderson's policies, Lexi did not pursue the UM policy coverage available under Henderson's second insurance policy following her accident. With the advice of counsel, in 2001 she signed a release in return for payment of the $25,000 maximum UM coverage available under the policy insuring the truck that Aaron LaMere wrecked.

¶18 In 2002, Ned Hardy challenged § 33-23-203, MCA (2001). Hardy had been seriously injured in an automobile accident with an underinsured driver. After receiving $50,000 from the other driver's liability insurer, Hardy sought further recovery from his insurer, Progressive. It was undisputed that Hardy's damages exceeded $50,000. He submitted that he had three vehicles insured with Progressive and paid three separate

7

premiums each of which paid for $50,000 in underinsured motorist protection. As a result, he opined, he was entitled to recover $150,000 from Progressive by stacking his three coverages. *Hardy*, ¶ 1. Hardy argued that it was against public policy in Montana for an insurance company to charge separate premiums for UIM protection for separate vehicles insured on the same policy but then refuse to stack the coverages in order to provide the insured with the greatest compensation. *Hardy*, ¶¶ 30-31. In an Opinion issued on April 18, 2003, we concluded that charging insurance premiums for "non-existent" coverage—second and third coverages for UIM that the insurer did not intend to pay—was indeed against the public policy in Montana. We therefore ruled that the statute precluding stacking under these circumstances was unconstitutional. *Hardy*, ¶¶ 37-42.

¶19 Subsequently, we were asked to address whether our ruling in *Hardy* applied retroactively to claims arising before the date *Hardy* was decided. In *Dempsey v. Allstate Ins. Co.*, 2004 MT 391, ¶ 31, 325 Mont. 207, 104 P.3d 483, Tyler Dempsey, on behalf of himself and a certified class, sued Allstate for additional payments from past insurance claims denied based upon anti-stacking provisions in the policies and the pre-*Hardy* anti-stacking statute. After briefly reviewing the history of retroactive application of our cases, we concluded *Hardy* could be applied retroactively *except* to those "cases that became final or were settled prior to [the] decision's issuance." *Dempsey*, ¶¶ 31, 37.

¶20 Lexi and Henderson argue on appeal that their "case is about whether [Lexi] settled a stacking claim when she signed FIE's 2001 release." They assert that the release she signed in 2001 released FIE for claims arising under Policy #58 alone. Relying on a

8

contract analysis, they claim Lexi neither intended nor consented to release the stacking claim. They also profess that the release is invalid as to a stacking claim because Farmers did not provide Lexi with consideration for giving up her stacking claim. They further allege that the release language was ambiguous and therefore should be construed against Farmers as the author of the release. Based upon this analysis, they claim the release did not discharge their stacking claim. Lastly, they submit that Farmers' payment of $25,000 in December 2006 under Policy #59 is evidence of and an admission that FIE "considered the stacking claim to be an open, unsettled claim." As such, *Hardy* should be retroactively applied because Lexi's claim was not final or settled before the *Hardy* decision was issued.

¶21　Addressing Lexi's claim that her release is invalid under a contract analysis, we note that Lexi and Henderson argued to the District Court that the release was ambiguous and lacked consideration. There is no record, however, that they asserted lack of intent and consent. Therefore, we will not address these arguments as they were not raised before the District Court and cannot be raised for the first time on appeal. *Estate of Donald v. Kalispell Reg'l. Med. Ctr.*, 2011 MT 166, ¶ 44, 361 Mont. 179, 258 P.3d 395.

¶22　At the hearing on Farmers' motion for partial summary judgment, the District Court did not expressly address Lexi's claims of lack of consideration and ambiguous language in the release. However, in determining that the release was legal and valid, the court specifically concluded that there was no reason for a 2001 release to contain language addressing stacking policies or referencing coverage under a second and separate policy held by the policy holder because, as a matter of law at the time, a

"stacking claim simply did not exist." The court concluded that "[Lexi's] case was . . . settled for policy limits, and at the time the release was signed and the policy limits were paid the only claim that [Lexi] had as a matter of law was no longer open and had in fact been settled with Farmers Insurance." The District Court acknowledged Farmers' payment under the second policy but attributed no legal significance to the payment, finding that Lexi had settled her only existing claim with Farmers prior to our issuance of *Hardy*, and therefore—under the clear language of *Hardy*—Farmers was entitled to summary judgment as a matter of law.

¶23 We have no evidence as to why Farmers' paid Lexi an additional $25,000 in December 2006 purportedly under Policy #59. Without such evidence, we cannot conclude that the payment was in any way an admission that Lexi's 2001 release and settlement was not full and final. We note, however, that payment of this second $25,000 achieved the same outcome as stacking Henderson's policies would have achieved—Lexi received the maximum UM benefit from both policies. Notwithstanding the fact that Lexi's personal anti-stacking claim against Farmers is arguably thereby rendered moot, we conclude the District Court correctly determined on the merits that Lexi's claim against Farmers was barred under *Dempsey*.

¶24 Lexi and Henderson attempt to avoid the consequences of *Dempsey* by asserting precepts of contract law and claiming the release Lexi signed in 2001 did not release their stacking claim. These arguments are unavailing. We very clearly held in *Dempsey* that in the interests of finality, *Hardy* would not apply retroactively unless the case in question was "pending on direct review or not yet final." *Dempsey*, ¶ 37. Elsewhere in

10

the opinion we stated: "For reasons of finality we also conclude that the retroactive effect of a decision does not apply *ab initio*, that is, it does not apply to cases that became final or were settled prior to a decision's issuance." *Dempsey*, ¶ 31. There is no question that Lexi's claim for benefits was settled prior to the issuance of *Hardy*; therefore, under *Dempsey*, *Hardy* will not permit the stacking claims she and Henderson now assert. Were we to re-open Lexi's claim for additional benefits now under any of the various premises she offers, our pronouncements in *Dempsey* would be rendered completely meaningless.

¶25 We likewise reject the argument that a dispute must be litigated—as opposed to settled—before the retroactivity limitations of *Dempsey* will apply. Plaintiffs urge us to apply language from an unpublished slip opinion authored by United States District Judge Donald Molloy in *Hoffman v. GEICO*, CV-06-83-DWM, Slip Opinion, 2006 WL 2925265 (D. Mont.). In that case, Judge Molloy stated: "[T]he *Dempsey* holding requires judicial finality to bar the retroactive application of *Hardy*, not some manner of settlement where one party was without legal representation and may not have received adequate consideration." Here, Lexi was represented by counsel when she accepted the maximum UM benefit then available and signed the release. More to the point, we have on more than one occasion since *Dempsey* stated that the retroactive effect of a decision does not apply to claims that were settled prior to our ruling in the *Hardy*. *See Schmill v. Liberty Northwest Ins. Corp.*, 2005 MT 144, ¶ 17, 327 Mont. 293, 114 P.3d 204; *Stavenjord v. Mont. State Fund*, 2006 MT 257, ¶ 1, 334 Mont. 117, 146 P.3d 724. We are not bound to follow *Hoffman* and decline to do so.

11

¶26 Because neither Lexi nor Henderson has a valid personal anti-stacking claim against Farmers, they are not proper representatives of a class consisting of other Farmers' policyholders who may have valid anti-stacking claims. *Mont. Trout Unlimited v. Beaverhead Water Co.*, 2011 MT 151, ¶ 27, 361 Mont. 77, 255 P.3d 179.

¶27 *Did the District Court err in ruling that neither Lexi nor Henderson had standing to bring a claim for medical pay coverage?*

¶28 The question of standing addresses the issue of whether the litigant is a proper party to seek adjudication of a particular issue, not whether the issue is justiciable. The test for standing is that the complaining party must clearly allege past, present or threatened injury to a property or civil right, and the alleged injury must be distinguishable from the injury to the public generally, but it need not be exclusive to the complaining party. *Mont. Trout Unlimited,* ¶ 27.

¶29 It is undisputed that neither Lexi nor Henderson paid premiums to obtain medical pay coverage under the applicable Farmers' policies. Because they have no personal claim against Farmers for failing to pay or stack such benefits under the two policies, they have no "past, present or threatened injury." Without such injury, they have no standing to bring a medical payment-related claim. This same rationale applies to their standing to represent other Farmers' policyholders in medical pay claims. It is well-established that "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183 (1996). Lexi and

Henderson simply cannot establish standing, personally or as representatives of a class action, because neither has a personal case or controversy against Farmers with respect to medical payment issues.

¶30 *Did the District Court abuse its discretion when it declined to certify a putative class for claims of unjust enrichment and disgorgement of premiums?*

¶31 As noted above, it is undisputed that Lexi did not pay any premiums to FIE; therefore, Farmers was never "unjustly enriched" at the expense of Lexi. As such, and in accordance with the standing analysis above, Lexi has no unjust enrichment claim against Farmers, either on her behalf or on the behalf of a putative class. The District Court did not abuse its discretion in so ruling and Lexi does not appeal this ruling.

¶32 Henderson argues on appeal, however, that <u>his</u> paid premiums unjustly enriched Farmers; therefore, he has standing to represent both himself and a class in a disgorgement of premiums claim.

¶33 Lexi and Henderson predicated their class action claim on Rule 23 of the Montana Rules of Civil Procedure. Rule 23(a) sets out the prerequisites to a class action which are numerosity, commonality, typicality, and adequacy of representation. It also requires that the representative of the class be a member of the class.

¶34 In June 2009, Henderson moved the District Court to certify the following class:

> All Farmers Insurance Exchange Montana insureds who purchased more than one stackable medical payments coverage, uninsured motorist coverage, or underinsured motorist coverage who were entitled to such stackable coverages but who did not receive the benefit of such stackable coverages.[3]

---

[3] We note that the class description included in Lexi and Henderson's Amended, Second Amended and Third Amended Complaints is somewhat different from this class description.

¶35 To determine whether Henderson was a member of the defined class, the District Court broke down the class description into the following three subsets: a Farmers' insured who (1) purchased more than one policy that included medical payment, UM and/or UIM coverage, (2) was entitled to stackable coverages, and (3) did not receive the benefit of stackable coverages. The court concluded Henderson satisfied the first criterion but did not satisfy the second two criteria. Reiterating its analysis of Lexi and Henderson's anti-stacking claim, the court again concluded that Henderson was not entitled to stackable coverages because Lexi had settled her claim with Farmers before the *Hardy* decision was issued. As noted herein, *Hardy* was not retroactively applicable. Because Henderson was not entitled to receive stackable coverages at the time Lexi's claim was settled, he was likewise not entitled to receive the benefits of stackable coverages. The District Court therefore held that Henderson did not have standing to assert an unjust enrichment claim for disgorgement of premiums on behalf of the class "entitled to such stackable coverages" because he was not a member of that class.

¶36 The court's legal analysis was correct. As neither Lexi nor Henderson had standing to represent the defined class under Rule 23(a), it was not an abuse of discretion for the District Court to deny class certification.

## CONCLUSION

---

However, because this is the description the District Court used to render judgment, and Lexi and Henderson do not challenge the court's use of this description, we analyze this issue under this class description.

14

¶37    For the foregoing reasons, we affirm the District Court's orders on summary judgment and class certification.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE