FILED

05/30/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0601

DA 16-0601

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 131N

TOWE FARMS, INC., and MIDSTATE
LAND CORPORATION,

        Plaintiffs and Appellants,

    v.

LINDA CORBETT, Clerk and Recorder
of Custer County, Montana,

        Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixteenth Judicial District,<br>In and For the County of Custer, Cause No. DV 06-62<br>Honorable Michael B. Hayworth, Presiding Judge |

COUNSEL OF RECORD:

        For Appellants:

            Thomas E. Towe, Towe, Ball, Mackey, Sommerfeld, Turner, PLLP,
            Billings, Montana

        For Appellee:

            Tara Depuy, Attorney at Law, PLLC, Livingston, Montana

            Susan B. Swimley, Attorney and Counselor at Law, Bozeman, Montana

                Submitted on Briefs:  March 29, 2017

                          Decided:  May 30, 2017

Filed:

                      _____
                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Towe Farms, Inc. (Towe) appeals the Sixteenth Judicial District Court's grant of summary judgment in favor of Custer County's Clerk and Recorder Linda Corbett (Corbett) on two issues:

> 1. Whether the existence of unrecorded aerial photographs, taken in 1974 and marked to show 40-acre parcels, sufficed to create a "grandfathered" subdivision prior to the enactment of the Montana Subdivision and Platting Act (MSPA) in 1973, and the act's subsequent amendment in 1974.
>
> 2. Whether an agreement for the sale of a large tract of land (the Bloch Agreement), which described the tract in terms of smaller parcels and contemplated the future sale of the smaller parcels, constituted a division of land that created segregated parcels sufficient to create a grandfathered subdivision under the MSPA.

¶3 We affirm the District Court's ruling.

¶4 We review de novo a district court's grant of summary judgment, to determine whether the movant established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. The district court's findings of fact are reviewed for clear error and its conclusions of law for correctness. *LaMere v. Farmers Ins. Exch.*, 2011 MT 272, ¶ 13, 362 Mont. 379, 265 P.3d 617. Here, neither party presents any

2

genuine issue of material fact. We thus review the District Court's legal conclusions to determine whether they are correct.

¶5 The MSPA regulates the creation of subdivisions in order to "promote the public health, safety, and general welfare. . . ." Section 11-3860, RCM (1973). Corbett refused to record certain deeds of sale because the transactions, which were sales of 40-acre parcels, failed to comply with the provisions of the MSPA. Towe argues that the deeds should be recorded because the tract from which the sales are derived is exempt from MSPA regulations as a "grandfathered" subdivision. The basis for Towe's argument is that the 40-acre parcels were larger than what the MSPA regulations covered, either in 1973 when the MSPA regulated 10-acre or less parcels, or after 1974, but prior to 1993, when the MSPA regulated 20-acre parcels. Not until 1993 did the MSPA expand to regulate all parcels less than 160 acres. Since Corbett's contention that the deeds should not be recorded is premised on the fact that they arise from sales of 40-acre parcels, and are thus subject to the MSPA's current regulation of parcels less than 160 acres, Towe's compliance with or exemption from earlier iterations of the law would potentially "grandfather" in the sales for recording, without the need to engage in the MSPA's subdivision review process. Towe's arguments are misplaced, however, as the transactions on which it relies to circumvent the current MSPA provisions are still deficient under prior versions of the statute.

¶6 Towe first asserts that in 1974, a surveyor by the name of Compton created aerial photographs of Sun Dial Ranch and drew lines on them denoting 40-acre tracts. Towe argues that we should now consider these marked photographs to be a subdivision of land

3

already in existence prior to the passage of the MSPA, and thus "grandfathered" in and exempt from its provisions. Like the District Court, we will not examine the sufficiency of these photographs to determine whether they constitute a division of land because it is undisputed that neither these photographs nor a concordant certificate of survey were ever recorded. The MSPA, adopted nearly one year prior to these aerial photographs, provided that, "all division of real property made after June 30, 1973 . . . the boundaries or area of which cannot be determined without a survey or trigonometric calculation, must be surveyed by or under the supervision of a registered surveyor; and a certificate of survey . . . must be completed by the surveyor and filed by him in the office of the county clerk and recorder of the county in which the real property lies." Section 11-3862(1), RCM (1973). Under the plain language of § 11-3862(1), RCM (1973), we will not give legal effect to the surveying of a parcel absent evidence of a certificate of survey having been recorded.

¶7      Towe then argues that if the Compton survey does not exempt the tract from the MSPA and validate the deeds for recording, the Bloch Agreement will. We disagree, concluding as the District Court did that the Bloch Agreement suffers from similar statutory shortcomings. Although the agreement was signed and properly recorded on December 7, 1984, prior to the MSPA being amended in 1993 to cover the transfer of parcels less than 160 acres, the agreement is nonetheless not a contract for the sale of land that created a division of land with segregated parcels sufficient to meet the definition of "subdivision" under the MSPA. Under the relevant portions of the MSPA in effect in 1984, § 76-3-103(3), MCA (1983), a "[d]ivision of land" means "the segregation of one or more parcels of land from a larger tract held in single or undivided ownership by transferring or

4

contracting to transfer title to a portion of the tract[;]" and a "subdivision" is defined as "a division of land or land so divided which creates one or more parcels containing less than 20 acres[.]" Section 76-3-103(15), MCA (1983). By Towe's admission, the Bloch Agreement did not create parcels containing less than 20 acres, so the issue on appeal is whether the language of the agreement amounted to a division of land segregating one or more parcels from the larger tract, and thus creating a valid subdivision in existence prior to the statute's amendment in 1993.

¶8 When interpreting the language of a deed, we apply rules of contract interpretation. Construction and interpretation of a contract are decided as a matter of law. *Wicklund v. Sundheim*, 2016 MT 62, ¶ 16, 383 Mont. 1, 367 P.3d 403. "[T]he language of a contract governs its interpretation if the language is clear and unambiguous." *Wicklund*, ¶ 19 (citing § 28-3-401, MCA). The relevant portions of the Bloch Agreement provided that the parties, Towe (Seller) and A. Howard Bloch (Purchaser), agree to a sale of "the property described herein: 260 Forty Acre tracts of platted land on the Sun Dial Ranch in Custer County, Montana[;]" that the "total aggregate price of the Land . . . shall be $2,080,000[;]" and that the transaction "shall be consummated in the following manner: Seller agrees to convey to Purchaser, land demised hereunder on an acreage or individual site basis upon receipt of $8,000 per 40 acres, site in cash, plus interest from the date of each contract to third party . . . ." Although Towe urges us to examine extrinsic evidence to bolster its argument that the Bloch Agreement constitutes a division of land, we look to extrinsic evidence to interpret a contract only where an ambiguity exists. *Habets v. Swanson*, 2000 MT 367, ¶ 13, 303 Mont. 410, 16 P.3d 1035. We find the Bloch Agreement language

5

sufficiently clear and unambiguous to interpret the terms as they were written. In doing so, we agree with the District Court that the agreement did not create segregated parcels, but was instead a sale of a large tract of land described in terms of smaller parcels, with the purchaser permitted to make incremental payments toward the whole of the purchase price as he was able to secure third-party subcontracts. A structured payment arrangement does not amount to the creation of a subdivision; the Bloch Agreement does not therefore exempt the sales at issue from the provisions of the MPSA and validate the deeds for recording.

¶9     Lastly, Towe argues that Corbett should be equitably estopped from refusing to file the deeds because some prior sales had been recorded, and because the clerk's office previously had made assurances that the Sun Dial properties would be grandfathered in when changes to the MPSA took effect in 1993. We agree with the District Court that the doctrine of equitable estoppel does not apply here because there was no misrepresentation or concealment of material facts, but instead a misrepresentation of law. Equitable estoppel requires clear and convincing evidence of a misrepresentation or concealment of a material fact and does not apply where "the conduct complained of consists solely of legal representations." *Elk Park Ranch v. Park Cnty.*, 282 Mont. 154, 166, 935 P.2d 1131, 1138 (1997). In *Elk Park*, landowners sought relief in equitable estoppel when Park County officials represented that the landowners' one-party deeds, which sought to circumvent certain provisions of the MSPA, were valid. The County allowed the landowners to record the deeds and pursue third-party sales in reliance on the deeds' validity. We denied the landowners relief under the equitable estoppel doctrine, reasoning that the County's actions

6

amounted to inadvertent misrepresentations of the law, not misrepresentations of fact. *Elk Park*, 282 Mont. at 166, 935 P.2d at 1138. Like in *Elk Park*, Corbett's misrepresentations and inadvertent recordings here amount to misrepresentations of the law, not fact. Towe thus cannot prove an element of the equitable estoppel doctrine. The District Court's conclusions are therefore correct and its ruling is affirmed.

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for unpublished opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE